## R. L. POUNDS V. THE STATE.

No. 17444.   Delivered March 27, 1935.
Rehearing Denied May 8, 1935.

The opinion states the case.

*Arney & Barker,* of Clinton, Okl., and *Hoover, Hoover & Cussen,* of Canadian, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for twenty-five years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Leon Kemp by shooting him with a gun. The testmony adduced by the State was, in substance, as follows: Deceased resided with his father in the family home which was about three and one-fourth miles from the town of Booker. On the night of December 23, 1933,

someone drove to deceased's home and honked the automobile horn. Deceased, who was reading, threw his book aside and went outside. Immediately after he got out of the house the party in the automobile shot him down. Upon going outside, the father of deceased saw the automobile moving away. Its lights were not burning. Deceased expired before he could be moved into the house. Shortly after the homicide appellant appeared at the telephone office in Lipscomb and asked the operator to call the sheriff. Appellant said to her: "I want the sheriff. I am the man that has been wanting the sheriff." She answered that she had been unable to get the sheriff and asked appellant if she could get some one else. Appellant replied: "Yes, m'am, anybody that can lock me up will do me good. I want to be locked up. Anybody that can lock me up will do me good." Appellant made the further statement to her that he lived at Booker, where he was a rural mail carrier. He said: "I have been a mail carrier there for years but I wont be any more." When the sheriff appeared appellant told him that he was in trouble again. He stated to the sheriff that he had shot deceased, and showed him the pistol he had used.

Appellant did not testify, but introduced several witnesses who gave testimony to the effect that appellant had been a regular drinker of intoxicants for several years; that since the war he had been very nervous; that he had a half-sister who was afflicted at times with a mental or nervous disorder; that he had a cousin who was insane and had been confined in an asylum; that appellant at times accused his best friends of being intimate with his wife; that the charge was without foundation, his wife being well-behaved; that frequently appellant told some of his children that he was not their father, as their mother had had relations with other men. Several witnesses expressed the opinion that when appellant was laboring under the delusion that his wife was having sexual relations with other men he was insane. A physician testified for appellant, in answer to hypothetical questions, that in his opinion appellant was suffering from insane delusions when he killed deceased and did not know the difference between right and wrong. Again, he testified: "And I would further say that at the time of the killing, based upon the facts aforesaid, that he did not know the difference between right and wrong, as connected with the killing of that man, though he might have known the difference between right and wrong, so far as the faithfulness or unfaithfulness of his wife was

concerned,—he could have known that and with relation to other matters, such as theft, for instance, he could have known the difference between right and wrong with reference to that, if it had nothing to do with the crime that he was about to commit." He testified, further, that from his observation of appellant he was of the opinion that he was insane.

Appellant's wife took the stand in behalf of her husband and testified that he had accused her on numerous occasions of having illicit relations with other men. She denied that she had indulged in any improper conduct and stated that, in her opinion, appellant was insane when laboring under the belief that she was untrue to him. She testified, further, that about a week before the homicide she was at a dance which was attended by deceased; that deceased was sitting by her, with his arm around her chair, begging her to dance with him when appellant came up and told her she could get up and let deceased take her home; that she went outside and sat in her car; that deceased came by and again asked her to go in and dance with him; that appellant came out to the car and deceased went away; that on the way home appellant cursed her and accused her of having improper relations with deceased; that she denied it; that on the morning of the day of the homicide appellant went on his usual route delivering the mail; that he came in at noon and told her to get ready and they would go driving after lunch; that later he went to town and bought some clothing; that he returned home some time just after dark; that she had been in a hospital where she had an operation performed, and was lying on a couch resting; that appellant threw his hat and coat down and told her that deceased had been there having improper relations with her; that appellant called her a whore and a bitch; that becoming tired of appellant's raving, she falsely stated to him that she had been having sexual relations with deceased; that appellant left the house. Appellant killed deceased the same night.

While appellant drank whisky, the testimony of his witnesses was to the effect the he never became intoxicated. He was conscientious and efficient in the performance of his duties as a mail carrier.

The matters relied upon for a reversal will be considered in the order in which they are presented in appellant's brief.

Appellant excepted to the charge of the court for its failure in making application of the law of murder to the facts "to exclude and negative the defensive theory of insanity." The court charged the jury, in paragraph 6, as follows: "Now if

you find and believe from the evidence in this case beyond a reasonable doubt that defendant R. L. Pounds, in the County of Lipscomb and State of Texas on or about the 23rd day of December, 1933, with malice aforethought, and not under circumstances that would reduce the killing to murder without malice, did voluntarily kill the said Leon Kemp by then and there shooting him with a pistol, as alleged in the indictment, you will find the defendant guilty of murder with malice aforethought and assess his punishment at death or confinement in the penitentiary for life or for any term of years not less than two."

Appellant contends that the court should have embraced in the foregoing instruction a further statement to the effect that before the jury could convict him they must believe that appellant was not insane. If this negative had been placed in the charge it would have shifted the burden to the State to prove beyond a reasonable doubt that appellant was not insane at the time he killed deceased. The burden was on appellant to establish his defense of insanity by a preponderance of the evidence. The court was not in error in declining to respond to the exception.

It appears from bill of exception No. 2 that a physician testified, in answer to hypothetical questions propounded by appellant's counsel, that appellant was suffering from insane delusions at the time he killed deceased. Upon cross-examination of the witness, counsel for the State propounded to him the following question: "Doctor, in view of the condition of the defendant as to his having these delusions as disclosed by the testimony and the hypothetical questions propounded, do you think that the fact that the defendant killed one man would have the effect to cure him of his delusions and that he might not have any more delusions?" Before appellant's counsel had time to object, the witness answered that he did not believe it would have such effect. Upon objection being made, the court instructed the jury not to consider the question and answer. We are unable to reach the conclusion that the testimony was improper. However, if it should be conceded that it should not have been received, we think the prompt action of the court in instructing the jury to disregard it saved appellant from harm.

It is shown in bill of exception No. 15 that one of counsel for the State, in the closing argument, used language as follows: "You go home and tell your children, your boy, that you turned a man loose who went out in the nighttime

and called a man to the door and shot him down like a dog and your boy will ask you why you did that and you say 'Because he was insane,' and your boy will run to his mother and hide his head in shame."

The bill of exception fails to show what action the court took when appellant objected to the argument. If it should be conceded that the argument was improper, the bill is insufficient in failing to show that the trial judge made any ruling on the matter, or was requested to do so. 4 Tex. Jur., 395; Watson v. State, 287 S. W., 265.

Bill of exception No. 12 recites that, in his opening argument, counsel for the State used language as follows: "Mrs. Pounds (defendant's wife) should have taken a gun years ago and killed the defendant." Appellant objected to the remarks of counsel. The bill also fails to show what action the court took, and is therefore insufficient.

Bill of exception No. 13 shows that counsel for the State, in argument, used language as follows: "You do not think that this woman (referring to defendant's wife) made any such statement to this defendant. The idea is preposterous. They had to have something like that in this case to save the defendant's hide."

It is shown in the bill that appellant's wife testified that she had stated to appellant shortly before the homicide that deceased had had sexual intercourse with her. Her testimony was to the further effect that the statement she made was not true but that, in view of the fact that appellant had persisted in accusing her of having improper relations with deceased, she made the statement referred to. This bill is in the same attitude as bill of exception 12. It fails to show what action the court took when the argument was objected to. In any event, we are of the opinion that the argument was proper.

Bill of exception No. 14 presents the following occurrence: In his opening argument to the jury counsel for the State asked that the death penalty be assessed against appellant. At this juncture appellant jumped to his feet, and, turning to the audience, shouted: "I am ready to take it." Continuing his argument, the district attorney said: "Pretty good performance. The defendant says he is ready to pay the penalty and we say 'Let him pay it.'" The court instructed the jury not to consider the remarks of the district attorney for any purpose. We are constrained to hold that the bill of exception fails to reflect error.

Bill of exception No. 11 shows that counsel for the State,

in argument, used language as follows: "Leon Kemp (deceased) is not here. He is lying under the sod and cannot tell you what to do with the defendant." We do not deem the argument to be of such a nature as to call for reversal.

It is shown in bill of exception 9 that appellant's written requested instruction No. 2 was refused. This instruction read as follows: "Gentlemen of the jury, you are instructed that in law a delusion is the same as insanity." In the bill of exception No. 10 it is shown that the following requested instruction was refused: "You are instructed that even though you should believe from the evidence that the defendant was sane and normal in every other phase of life, save and except on the question of the chastity of his wife, the fact of his being sane and normal in such other phases of life would not impinge upon the defendant's theory of insanity on the question of his wife's chastity, and his acts committed while under the influence of such insanity, if you should find that he was so insane on that particular question, and his sanity on such other phases of life should not be considered by you in determining whether or not he was insane on the question of his wife's chastity, and your inquiry as to whether or not he was insane in the commission of the act with which he is charged will be directed to his delusions as to the chastity of his wife." We think both requested instructions embody incorrect propositions of law. The latter instruction is clearly on the weight of the evidence. Under the circumstances, there was no error in refusing to charge the jury as requested. The court gave a charge on insanity.

We are unable to agree with appellant's contention that the evidence is insufficient to support the conviction.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In appellant's motion for rehearing he stresses mainly the fact that in his bills 2, 12, 13, 14, 15 and 16 the matters objected to were in fact certified by the trial court to be prejudicial, harmful, etc., and in some instances outside the record. We have given all the complaints our careful attention. Examining bill No. 2, we observe that

same sets forth a question asked by State's attorney of a defense witness, which was answered before appellant had time to object. The objection when made was sustained, and the jury were instructed not to consider same. Appellant now insists that not only was the question harmful, but he calls our attention to the fact that in said bill it is stated that the question was improper, prejudicial and inflammatory, injecting into the minds of the jury the proposition that notwithstanding they should find and believe that this killing resulted from an insane delusion of appellant, he should not be acquitted, because he might have the same delusion again and kill another man,—appellant contending that the bill containing such fact statement is approved, and that this amounts to a certificate of the trial judge to the harmful character of the question. Where the bill contains no recital of the facts or circumstances surrounding or leading up to the question, or other matter which is certified to by the court as being harmful, prejudicial, etc., it might become necessary for us to accept the approval of such bill as a binding certificate of the harmful and evil character of the matter under consideration, but in a bill such as the one before us, wherein we have set out at length the testimony and circumstances surrounding the matter complained of,—we must be allowed to exercise our own discretion regarding the question or matter deemed objectionable. We are not led to believe from an examination of the recitals of the facts in the bill that the question was an improper one. The question is set out in our original opinion. We are unable to make application of what we said in Smith v. State, 117 S. W., 970, or in Reeves v. State, 35 S. W. (2d) 713. In the Smith case the matter there discussed was a statement shown to be dehors the record and coupled with a personal appeal and promise on the part of the State's attorney to help the accused if the jury should convict.

Our attention is called to the fact that in each of said other bills the trial judge certifies that there was nothing in the record to warrant the remarks of counsel for the State, and that said remarks were prejudicial and inflammatory. Reeves v. State, 35 S. W. (2d) 713, is cited in support of appellant's contention that a certificate of the trial judge to a bill of exceptions, to the effect that an argument is not supported in the record and is prejudicial and inflammatory, places this court in a position in which it can do no less than to reverse the judgment of conviction.

The first case on the point urged by appellant was Roberts

v. State, 27 S. W. (2d) 159. An examination of the record in that case discloses that each of the bills of exception bringing forward the argument of which complaint was made, embraced a certificate to the effect that said argument was not warranted by the evidence, was out of the record, was calculated to inflame the minds of the jurors against the accused, and was not responsive to nor warranted by any statement or argument made by counsel for the defendant. None of the bills contained any of the evidence adduced upon the trial. The circumstances under which the argument was made were not disclosed by the bills. In short, the bills only showed the argument and the objections thereto, together with a statement by the trial court that the argument was not supported by the evidence, was prejudicial, etc. In the absence of any showing in the bills that such recitals by the trial judge were not true, the conclusion was reached in Roberts' Case that this court was bound by the statement that the argument had no warrant in evidence and was prejudicial. In the course of the opinion the court said: "If such recitals do not state the facts, they should not be approved. If such recitals are true, new trials should be granted." Manifestly, we were not dealing with a situation in which the bills of exception in themselves showed the facts and circumstances in evidence upon which the counsel for the State predicated his argument. McKee v. State, 34 S. W. (2d) 592; Traylor v. State, 47 S. W. (2d) 310; Horton v. State, 61 S. W. (2d) 843; Bryan v. State, 70 S. W. (2d) 715, and Reeves v. State, supra, are other cases on the point under consideration. An examination of the record in each of said cases discloses that, as in the case of Roberts v. State, supra, the bills of exception merely set forth the argument and objections thereto, together with the statement of the trial court that said argument had no support in the evidence, was prejudicial, etc.

Looking to the bills of exception in the instant record, it is observed that bill No. 11 sets forth in great detail the evidence adduced upon the trial, it being shown in said bill that appellant drove to the home of the deceased at night and assassinated him. After setting forth the evidence, the following recital is made in said bill: "The foregoing substantially is the state of the record and there being nothing in the record to warrant the following prejudicial and inflammatory argument of the State's attorney, in his opening argument the State's attorney made to the jury the following inflammatory, prejudicial and unwarranted argument, to-wit: 'Leon Kemp

(deceased) is not here. He is lying under the sod and cannot tell you what to do with this defendant.' "

It is stated in the bill that said argument was made in connection with the plea of the district attorney to the jury that they inflict the death penalty. Considered in the light of the recitals of fact embraced in said bill, it is manifest that the argument was not inflammatory and prejudicial. In such case we are of opinion that the statement in the bill that the argument was unwarranted and prejudicial is no more than a conclusion of the trial court upon facts stated from which we are at liberty to hold that he reached an erroneous conclusion, a situation entirely different from that presented by a bill which sets forth no facts in evidence and leaves us in the dark as to the circumstances under which the argument was made, merely showing the argument, the objections thereto, and the statement by the trial court that said argument was not supported by the record, was prejudicial, etc. The distinction between the situations mentioned is obvious. In the case before us the testimony is set forth in the bill itself as well as the circumstances under which the argument was made, all of which show that the statement that said argument was not supported, etc., was a mere conclusion. The facts being stated in the bill and certified to by the trial judge, this court, in examining the bill, is in a position to determine whether the argument was proper. It would seem clear that there being nothing more in a bill of exceptions than a statement by the trial judge that the argument was unwarranted, inflammatory, etc., this court would find itself shut up to the position of compulsory acceptance, without opportunity to exercise any discretion in determining whether the bill presents error. We are not confronted with such unfortunate situation in this case, and must ourselves pass on whether there be merit in appellant's complaint, in the light of the facts set out in the bill. We find none.

In bill of exceptions No. 12 it is shown that the district attorney stated in argument that the wife of appellant should have taken a gun years ago and killed the appellant. As in bill of exceptions No. 11, it is stated in the bill that the argument was improper, prejudicial and unwarranted by the record. The testimony adduced upon the trial is set out in much detail, it being shown in said bill that appellant had for several years persisted in accusing his wife of having sexual intercourse with other men; that he had told his children that their mother was an immoral woman; that he had stated, in effect,

that two of said children were bastards. In short, the bill shows that appellant had been for a long time mistreating his wife and making false accusations against her. As in the case of bill of exceptions No. 11, we are in a position to determine from the facts shown on the face of the bill and the circumstances under which the argument was made, that it was not of that prejudicial and inflammatory nature requiring a reversal of the judgment. The facts and circumstances shown in the bill might show that the argument was of doubtful propriety, but we do not deem same of such prejudicial and inflammatory character as to demand reversal, and the stated conclusions of the court will not be accepted as a binding certificate that the argument is of such kind. The distinction between said bill and the bills dealt with in Roberts v. State, supra, and the other cases hereinbefore mentioned, is the same as that mentioned in our discussion of bill of exceptions No. 11. The statement of the State's attorney put no harmful fact before the jury, whose verdict in this case negatives any idea that they were prejudiced against appellant.

It is shown in bill of exceptions No. 13, among other things, that appellant's wife testified upon the trial that she told appellant shortly prior to the homicide that she had had intercourse with deceased. In addition to this, evidence adduced upon the trial is set forth in great detail. The same statement relative to the argument being unwarranted and improper is shown in this bill as is embraced in bills of exception 11 and 12. The argument complained of was as follows: "Do you think that that good woman (referring to defendant's wife who was his principal and only witness on the defensive theory of homicide without malice) made any such statement to this defendant? The idea is preposterous. They had to have something like that in this case to save the defendant's hide." Manifestly, the district attorney had the right to discuss the truthfulness of appellant's wife in this regard, and to urge the jury to disbelieve the testimony she gave in appellant's defense. We think the bill is in the same attitude as the bills hereinbefore discussed, that is to say, the facts and circumstances shown in the bill justify a different conclusion from one that the statement was unwarranted, etc., and amounts to no more than a certificate on the part of the trial judge, which is not binding on this court. What we have said applies also to bills 14, 15 and 16.

We have carefully examined the other bills of exception referred to in appellant's motion for rehearing and are con-

530

strained to hold that they were properly disposed of in the original opinion.

The motion for rehearing is overruled.

*Overruled.*

MORROW, P. J., absent.