CECIL LESTER BROWN V. STATE

No. 33,781.   December 13, 1961
Motion for Rehearing Overruled January 31, 1962

*Peter P. Cheswick,* Houston 2, for appellant.

*Frank Briscoe,* District Attorney, *Carl E. F. Dally, Erwin G. Ernst,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

Rape is the offense; the punishment, death.

The state's testimony reflects that the complaining witness, Dora Ybarra, 28 years of age and the mother of four children, was employed as a waitress at a cafe.   She finished her work at 11:30 P.M., and went to another nearby cafe to eat and meet her estranged husband.   Soon thereafter, her husband had an argument with another woman and went out on the street, where he engaged in a fight with some men who beat him and drug him into a car and drove away.   The witness went out into the street, screaming and hollering at the other men to leave her husband alone.   After they drove away, she started to walk to her home which was about two and a half blocks from that point. As she was walking in the direction of her home, a white car

stopped and a Negro man came up behind her. She said that she tried to get away and that she hollered. At this time, the Negro, assisted by another Negro, slapped her in the face, grabbed her by the hair and pushed her inside of the automobile. She said that it was the appellant Brown who first got out of the car and that he was the one who hit her in the mouth and grabbed her by the hair. They then dragged her into the car, took her purse and removed its contents. After driving several blocks, the appellant tried to force her to have sexual intercourse with him in the car but was unsuccessful. The car was then driven to a place close to the railroad tracks, in the same general area, and she was taken into the high weeds and grass close to the tracks. Her clothing had been ripped from her body. The appellant Brown prevailed over his companions, after they had quarreled to see which would be the first to have intercourse with her. The appellant struck her in the mouth with some brass knuckles which he had in his hand, and she was kicked by his companions. The other Negroes held her hands and feet while the appellant had intercourse with her. She related that after all of the Negro boys present had intercourse with her, she seemed to lose consciousness. Upon regaining consciousness and finding herself alone after the attack, she made her way nude to the home of Gertie Crumeby, a Negro woman. She was allowed to bathe at Gertie Crumeby's house and was given some clothing to wear. The police were called, and she was then removed to the hospital. Later, at a police line-up, she identified the appellant as being one of those who attacked her. The witness identified her clothing which had been torn from her body and also a religious medallion she had been wearing and which had been torn from her neck at the time she was attacked. These items had been found where the offense occurred. She also identified a picture which had been in her purse. She further identified a scrap of paper upon which was a telephone number of a friend of hers. This scrap of paper had been recovered from the car in which it was admitted the appellant and his companions had been riding earlier in the evening.

The witness Amelia Frances Gomez testified that she lived at a hotel. The hotel was close to the cafe where Dora Ybarra's husband had had an argument with the woman and where the unknown men had beat him and placed him in an automobile and driven away. This witness stated that she and the proprietor of the hotel where she lived heard a woman screaming and went out into the street in front of the hotel, where she observed the events about which she testified. She further testi-

fied that after the car drove away with Dora Ybarra's husband she saw Dora Ybarra walking down the street and saw a car pull up beside her. She saw the appellant, assisted by another Negro, get out of the car and grab the complaining witness by the hair and drag her into the automobile and drive away. She positively identified the appellant, and further related that she identified him in the police line-up the day following the attack. Upon cross-examination by defense counsel concerning why she had not reported the event, and as to whether such an occurrence was common, she stated that "in Fifth Ward everything happens out there."

Appearing as a witness, Gertie Crumeby testified that Dora Ybarra came to her house in the early morning hours in a naked condition. She said that Dora Ybarra told her that she had been raped by ten Negroes. She had Dora Ybarra bathe the blood from herself, gave her some clothes and called the police.

Eddie James Cumbo, Jr., testified that the appellant had borrowed his car on the night the offense occurred, that at the time he last saw them the appellant and his three co-indictees and Earnest Murphy were together. The appellant was to return the automobile the same night, but he did not do so and the witness did not obtain possession of it until several days later.

Earnest Murphy testified that the appellant and his three co-indictees took him to his home early in the evening before the time the offense was committed. He also testified that his home was about nine blocks from the place where the appellant and his companions forced Dora Ybarra into the car.

The state introduced the voluntary statement of the appellant made the afternoon following the commission of the offense. In the statement, the appellant relates that he was driving around Houston in an automobile with certain companions, and that:

"When we pulled up to the stop sign, there was a Mexican woman and a couple of Mexican men fighting in front of the cafe. There was a black Buick pulled up near the cafe. I started to drive on, but everybody started hollering 'Turn, man, turn.' I turned to the right and when I got back in front of the apartment house on the corner of McKee and

Conti, the two Mexican men were in the black Buick and the Mexican woman was in the street, and the men were trying to drag the woman into the car. She broke loose and started running down the sidewalk in front of the apartment house towards the next corner, Providence. Busby told me to stop the car and let him out so he could catch her. I stopped and Busby got out and I circled around the same block again. When I got back to McKee and Providence, I could see Busby and the Mexican woman on down across McKee in about the middle of the block. Busby had the woman by the arm, and when I drove up they both got in the front seat with the Mexican woman in the front seat between me and Busby. Glynn and Pickens were in the back seat.

"After I picked up Busby and the woman, I circled the block and got back on Lyons and drove on down to West Street and turned left. I drove a few blocks on West and then turned off to the right and got back about one-half block from some railroad tracks and the car went dead. We sat there for a few minutes and a car came by and gave us a push. We drove on down and turned back to the right and then Busby told me to stop. I stopped and Busby and the Mexican woman got out and went in front of the car. The woman laid down and Busby tried to have intercourse with her, but he said he couldn't. Then Pickens got on her and had intercourse with her, and after he finished Glynn got on her and had intercourse with her, and after he finished I got on her and had intercourse with her.

"After I had finished, Pickens and Glynn left, and Busby said he was going to try again, he took the Mexican woman off in the weeds next to a railroad track. I was trying to push the car, but I couldn't push it by myself so I hollered to Busby to come help. Busby didn't come on right then, but in a few minutes he came over to the car and told me he had got his licks off. I never did see the Mexican woman after that."

The appellant testified in his own behalf. He told of driving around the city of Houston to various places with his companions earlier in the evening preceding the time of the offense. He further related that after all of his companions had gotten out of the car and he was driving alone, that a Mexican woman hollered at him to stop and to wait a minute, and that he stopped and let her get into the car. He testified that he tried to take

her where she directed him but that his car stalled, and that she told him she could walk the rest of the way. He also said that he did not see her after that time. He would not positively say whether or not the complaining witness, Dora Ybarra, was the woman that he picked up. He said that he did not have intercourse nor did he rape the Mexican woman to whom he gave a ride in the car. The appellant repudiated the confession made to the police officers, and he said that he gave the police officers a statement because they were going to beat him.

Four police officers with the city of Houston police department testified as to their part in the investigation of this offense, including the finding in the automobile in which it was shown that the appellant and his companions had been riding a piece of paper which had come from the purse of Dora Ybarra. The officer who took the voluntary statement from the appellant rebutted the testimony of the appellant that he was induced to make the statement through threats or force.

Dr. Curtis McGinley, a Doctor of Medicine, testified that he examined Dora Ybarra the morning following the attack upon her. He found blood under her chin, a bruise inside her mouth on the upper lip and a deep cut inside the mouth on the lower lip, and a bruise about the left eye. He found numerous scratches on her entire back and buttocks, and an oral impression on her right breast that had the appearance of teeth marks. He found scratches inside her vagina, and a microscopic examination of a smear from the vagina revealed one non-motil sperm.

We find the evidence is abundantly sufficiently to support the verdict of the jury. The court's charge was full and complete and gave the appellant every right to which he was entitled. There were no objections or exceptions made to the court's charge, and no requested charge was presented.

Appellant in his brief, and by two formal bills of exception, relies upon three grounds for reversal:

1. That the complaining witness, Dora Ybarra, was not sworn prior to testifying in the trial of this case. This contention is raised by affidavit attached to appellant's Motion for New Trial.

2. He contends that Dora Ybarra was not the name of the complaining witness as alleged in the indictment, and that she

was not known by that name. He also raises this contention by an affidavit, attached to appellant's Motion for New Trial, in which the injured party swore that her name was Olivia Ybarra or Olivia Galviz but not Dora Ybarra as alleged in the indictment.

3. That the argument of the state's attorney was improper and constituted reversible error.

We observe that the original Motion for New Trial was filed January 27, 1961, the amended Motion for New Trial was filed on February 15, 1961, the court granting leave to file this amended Motion for New Trial and setting a hearing on it for March 3, 1961. The amended Motion for New Trial was heard on March 10, 1961, the date set by the trial court. Although the trial judge heard the amended Motion for New Trial on the twenty-sixth day after it was filed, it is our opinion that the amended Motion for New Trial had already been overruled by operation of law on March 8, 1961, and that it was not properly before the trial court, nor is it before this Court for review. In Brinkley v. State, 320 S.W. 2d 855, we held:

"With the possible exception of Atkinson v. State, 299 S.W. 2d 951, the decisions of this Court under Article 755, V.A.C. C.P., are to the effect that the motion for new trial or amended motion for new trial is overruled by operation of law at the expiration of the period of twenty days within which the statute requires it to be determined by the court."

We do observe, nevertheless, on account of the gravity of the case here presented, that if the matters complained of by appellant in his amended Motion for New Trial were properly before us for review, they would present no error. The record shows that the witness, Dora Ybarra, was duly sworn, prior to testifying; thus, this contention would be without merit.

During the trial of the case, all witnesses and attorneys referred to the complaining witness as Dora Ybarra. There was not the slightest suggestion that that was not her name. When the complaining witness went to Gertie Crumeby's house immediately following the commission of the offense, she told Gertie Crumeby that her name was Dora Ybarra. The investigating police officers knew her only by that name. She was

treated by the doctor at the hospital under the name of Dora Ybarra. The grand jury knew her by that name. The complaining witness, herself, testified upon the trial that her name was Dora Ybarra. There is not one shred of evidence in the statement of facts that the complaining witness was known by any name other than Dora Ybarra. We express the view that while this issue was not properly raised, if it was raised at all, all of the evidence shows that the name of the complaining witness at the time of the offense was Dora Ybarra, and such name was properly alleged under the provisions of Article 401, V.A.C. C.P. Appellant's formal bill of exception No. 2, by which he attempted to preserve this error, was refused and qualified by the trial court, to which the appellant formally excepted and did not file a bystanders' bill. Therefore, nothing is presented by this bill for the Court to review. Wortham v. State, 169 Tex. Cr. Rep. 164, 333 S.W. 2d 158.

We next turn our attention to appellant's contention that the argument of state's counsel was reversible error. The appellant did not request that the arguments of counsel be transcribed by the court reporter, and no statement of facts containing the argument of either the appellant's counsel or the state's counsel is filed in this court. The appellant has attempted to preserve this matter by filing a formal bill of exception, which is formal bill of exception No. 1. This formal bill of exception presented by the appellant was refused for the reasons given by the trial court and qualified as shown by the record. The appellant did not accept the court's qualification of his formal bill of exception but formally excepted to the qualification. A bystanders' bill was filed by the appellant, the complete body and substance of which, omitting the formal parts, reads as follows:

"The assistant district attorney argued to the jury that 'the dead of World War I and II did not die in vain. They died to make sure of democracy; they died to give everybody freedom. Their deaths demand that you give this man death in the chair for the thing he did in this case.

"Whereupon the attorney for Cecil L. Brown, defendant, objected to the Judge because such statement was prejudicial and *inflammatory*. The Judge simply stated that 'Stay in the record' and refused to tell the jury not to pay any attention to the argument, as requested by the counsel for the defendant.

"This argument was not invited by the defendant since his counsel had not argued before the jury any matter touching the 'dead of Wars No. I or II' or any war argument at all. "Some of the jurors appeared to be very much interested in this argument."

This bystanders' bill is in no way controverted by the state, inasmuch as it appears from the record that the bystanders' bill was filed on the 15th day following the court's qualification of the appellant's formal bill of exception. The bystanders' bill is therefore before the Court for its consideration.

1. The appellant did not object to the ruling of the trial court, and certainly he did not except to an adverse ruling of the trial court showing dissatisfaction of the court's ruling. It is necessary that a formal bill make such a showing. Grizzell v. State, 164 Tex. Cr. Rep. 362, 298 S.W. 2d 816, 820; Hampton v. State, 248 S.W. 2d 488, 489; Page v. State, 281 S.W. 871; and Pounds v. State, 81 S.W. 2d 698, 700-701.

2. The bill does not show how, or in what manner, the argument was improper. In Pombo v. State, 279 S.W. 263, it was said:

"Bill of exceptions No. 5, complaining of the argument of state's attorney, does not present any facts showing how or in what manner said argument was improper. The rules in regard to bills of exception are well understood, and it is always held that the bill must contain sufficient facts to manifest the error complained of in order that this court be not compelled to search the statement of facts or the record otherwise to ascertain if the matter complained of in a bill of exceptions be sound.

"Finding no error in the record, the judgment will be affirmed."

It is difficult to understand how the argument could have influenced the jury in this case. This Court has held that language which may be objectionable may be so illogical, fanciful or extravagant as to require a conclusion that it could not have influenced the jury in arriving at their verdict. Coats v. State, 265 S.W. 891; Bryan v. State, 252 S.W. 2d 184; Cross v. State, 89 S.W. 2d 217, 219; and Stalcup v. State, 92 S.W. 2d 443, 445.

In Coats v. State, supra, it was said:

"Another bill complains of the argument of the district attorney. From it we quote:

" 'Gentlemen, if you should fail to convict this defendant, the Statue of Liberty would hang her head in shame; you had as well tear down the courthouse and plant the ground upon which it stands in a corn patch so they could use it, and manufacture liquor and serve it to the public; the sheriff of this county had as well surrender his commission, because his acts will be for naught.'

"Though this flight of imagination may not with propriety be cited as a model of eloquence nor an example of logic, it cannot be assumed that the verdict of the jury was responsive to the extravagant statement of counsel rather than to the facts adduced upon the trial. In the reviewing court, the verdict having the sanction of the trial court and the evidence heard are important elements in estimating the effect of remarks of counsel which, though improper, are not obviously harmful."

We do not feel that the argument complained of reflects reversible error. Appellant's contention is overruled.

We have carefully consideration all of the informal bills of exception and find no merit in any of them.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

DICE, Judge.

Appellant again urges as reversible error that the prosecutrix was not sworn as a witness in the case. As pointed out in our original opinion, the record reflects that the witness was duly sworn and the question was first raised by appellant in his motion for new trial. It is the rule that after a verdict has been given, it is too late to complain for the first time, that a witness was not sworn. 1 Branch's Ann. P.C. 2d Ed., sec. 370, p. 392; Spriggs v. State, 163 Tex. Cr. R. 167, 289 S.W. 2d 272.

While the issue as to the name of the prosecutrix was not properly raised by appellant, we have again reviewed the record and remain convinced that her name, alleged in the indictment as Dora Ybarra, was shown to be the name by which she was known and no variance exists between the pleading and proof with reference to her name.

We have also again considered appellant's complaint to the argument of state's counsel and find no reversible error therein.

The motion for rehearing is overruled.

Opinion approved by the Court.