Wallace **MALLORY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 6–84–105–CR.

Court of Appeals of Texas,
Texarkana.

Nov. 13, 1985.

Thomas Newman, Texarkana, for appellant.

John F. Miller, Jr., Asst. Dist. Atty., Texarkana, for appellee.

CORNELIUS, Chief Justice.

Wallace Mallory was convicted of aggravated sexual assault of a child. Punishment was set at twenty-five years in prison. In this appeal he contends that the trial court erred in admitting the child's videotaped statement, that his written confession was improperly admitted in evidence, and that there was insufficient evidence to support the conviction.

R___ S___ was seven years old at the time of the offense. One week after the assault took place, R___'s mother discovered a vaginal discharge on R___'s underwear. The child was later diagnosed as having gonorrhea. After the child received medical treatment, she was directed to the Texas Department of Human Resources, where Ms. San Sisco of that agency videotaped a statement in which the child stated she had been sexually assaulted by a black man named "Slick," who had babysat with her. "Slick" was Mallory's nickname, and he babysat with R___ on September 5, 1983, the date of the offense, as well as on several other occasions. Four days prior to trial, Ms. Sisco videotaped another shorter statement of the child. It was the statement admitted before the jury.

Mallory made a written statement which was introduced at trial and in which he admits sexual intercourse with the child and corroborates her statement in most respects except that he claims she initiated the sexual activity.

Mallory contends that his confession was not voluntarily given. Prior to admitting the confession, the court held a *Jackson v. Denno* hearing on voluntariness. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The court entered findings of fact supporting its conclusion that Mallory confessed freely and voluntarily.

Mallory challenges these findings in two ways: First, he contends that he was threatened and intimidated prior to his *Miranda* warnings. Second, he argues he was mentally incapable of making a voluntary and intelligent waiver of his rights to counsel and of silence.

■ To be admissible, a confession must be taken in compliance with the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (incorporated in Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1979)), and it must be voluntarily given. *Ochoa v. State,* 573 S.W.2d 796 (Tex.Cr.App.1978).

At the *Jackson/Denno* hearing, the arresting officer testified that Mallory received the required *Miranda*/Article 38.22 warnings before any discussion of the crime, that he voluntarily agreed to confess, that because he indicated he could only write his name the confession was typed and read back to him for his signature, and that he signed the confession in the presence of two other witnesses. The magistrate testified that after he read Mallory his rights, he asked him whether he understood each of them, and Mallory responded that he did.

Mallory testified that before receiving any *Miranda* warnings the officers threatened him with life imprisonment, and that the statement was false and was fabricated by the officers. He also testified that he was afraid the officers were going to beat him, and that he told the officers he did not want to make a statement, but signed it because he felt he had to.

■ Mallory relies on *Ochoa v. State,* supra, in support of the argument that his *Miranda* rights were violated. In *Ochoa,* a confession was suppressed where the defendant admittedly inquired informally about the availability of counsel during questioning, but no counsel was afforded him prior to the confession. Here, Mallory contends he was adamant about refusing to give a confession. The officer denied any such statement, however, and testified that Mallory did not tell them he did not want to confess. At the voluntariness hearing, the trial judge is the trier of fact and the sole judge of the credibility of the witnesses. *White v. State,* 591 S.W.2d 851 (Tex.Cr. App.1979); *Aranda v. State,* 506 S.W.2d 221 (Tex.Cr.App.1974). There was sufficient evidence to support the court's findings that the statement was voluntarily given.

■ Mallory also contends he was incapable of making an intelligent waiver of his rights. His only support for this argument is that he could not read or write. The mere fact that a defendant is illiterate does not render him incapable of making a voluntary, knowing, and intelligent waiver of his rights. Other factors, including his competency to stand trial, his general capacity to understand, and his testimony in court, are relevant and may support a conclusion that he understood his actions. *See Combs v. State,* 643 S.W.2d 709 (Tex.Cr. App.1982); *White v. State,* supra. In this case, the officer and magistrate both testified that Mallory understood his rights, and waived them voluntarily. We find sufficient evidence to sustain the court's finding.

Mallory challenges the sufficiency of the evidence to support the judgment of conviction.

■ Aside from his denial of the circumstances of the offense from the stand, the only exculpatory evidence Mallory presented was that there was insufficient evidence of penetration, that he was out of the state on the date of the offense, and that on October 25, 1983, some seven weeks after the offense, he had no veneral disease. As to penetration, one of the doctors testified that when he examined the child sometime after the alleged offense, he found no evidence of penetration, but there was direct evidence from the victim that there was penetration. As to penetration, one of the doctors testified that when he examined the child sometime after the alleged offense, he found no evidence of penetration, but there was direct evidence from the victim that there was penetration. The alibi testimony regarding a family outing

to Magnolia, Arkansas, came from three of Mallory's relatives. The jury was not bound to accept that interested witness testimony. The evidence regarding Mallory's lack of venereal disease showed that he had no gonorrhea on October 25, 1983. On cross-examination, one of the defendant's witnesses from the Family Health Center of Texarkana/Bowie County, which conducted the test, testified that such a finding did not mean that Mallory was free from gonorrhea on September 5, 1983; that the disease could have been successfully treated in the time from September 5, 1983 to October 25; and that some over-the-counter drugs had been known to successfully treat the disease in a very short period of time. Moreover, R____'s testimony was that Mallory had intercourse with her on several occasions prior to the one on September the 5th.

 Finally, Mallory challenges the admission of the videotape statement of the child admitted pursuant to Tex.Code Crim. Proc.Ann. art. 38.071 (Vernon Supp.1985). Mallory does not raise any ground of error that the videotape violated his constitutional rights of confrontation, although he does argue that issue in the text of his brief. While we do not believe he has properly raised that constitutional point, we hold, in accordance with *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) and *Jolly v. State,* 681 S.W.2d 689 (Tex.App.—Houston [14th Dist.] 1984, pet. granted) that the admission of the videotape did not violate the confrontation clause of the United States Constitution. In this case the child victim was tendered for cross-examination but Mallory chose not to examine her.

Mallory also contends that either the videotape did not comply with the requirements of the statute, or that the method contained in the article for providing cross-examination of the child at trial was violative of his confrontation rights.

Article 38.071 provides, among other things, that:

. . . .

Sec. 2. (a) The recording of an oral statement of the child made before the proceeding begins is admissible into evidence if:

(1) no attorney for either party was present when the statement was made;

(2) the recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(3) the recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered;

(4) the statement was not made in response to questioning calculated to lead the child to make a particular statement;

(5) every voice on the recording is identified;

(6) the person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) the defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) the child is available to testify.

. . . .

Appellant raises three attacks on the admitted videotape. He contends that (1) since the videotape was made after the complaint was filed it was not made "before the proceedings began" as required by Section 2; (2) since the tape admitted in evidence was not the same as the first videotape made by Ms. Sisco in October of 1983, it was altered in violation of Section 2(a)(3); and (3) the taped statement was made in response to leading questions in violation of Section 2(a)(4).

 The statutory language "before the proceeding begins" refers to the beginning of trial. As the court noted in *Jolly v. State,* supra: "It would be illogical to limit admissibility of a videotaped recording to cases where the recording was made before the complaint was filed."

 Further, we find that the tape admitted at trial was not altered within the meaning of the statute. Section 2(a)(3) of the article addresses mechanical and electronic accuracy, and hence freedom from mechanical or electronic alteration. The first tape was not mechanically altered. Instead, in order to comply with statutory predicates not made in the first tape, the interviewer made a second one. The second tape was accurate and not altered.

 Neither do we agree that the tape was invalidated by the use of leading questions. The statute prohibits the tape's use if it is made "in response to questioning calculated to lead the child to make a particular statement." We construe this language as invalidating the tape only if, taken as a whole, the statement is the product of leading questions. Leading questions that are isolated, or those concerning the details of testimony already given in response to proper interrogation, or those concerning matters not directly relating to the offense, will not destroy the tape's admissibility so long as the overall product is not the result of suggestion.

We have carefully reviewed a transcript of the tape. Many of the questions attacked by Mallory are not leading, and most of those which are leading pertain only to the details of acts already testified to by the child in response to nonleading questions. Viewing the statement as a whole, it is not the product of leading questions calculated to produce a particular statement. *See Jolly v. State*, supra.

The judgment is affirmed.