**Earl CHAMBERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00520–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 28, 1988.

John Gilleland, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, for appellee.

Before WARREN, DUNN and COHEN, JJ.

## OPINION

COHEN, Justice.

This case presents the following question:

> Can a defendant be found guilty of a crime beyond a reasonable doubt when the victim testifies that no crime occurred, and there is no sworn testimony to the contrary?

We answer in the negative.

A jury found appellant guilty of indecency with a child, and, after finding an enhancement paragraph to be true, assessed punishment at 16½ years confinement. The indictment alleged that on March 9, 1986, appellant, with intent to arouse his sexual desire, exposed his genitals to the complainant, who was under seventeen years of age and was not his spouse.

A videotape of the complaining witness was admitted into evidence at trial under Tex.Code Crim.P.Ann. art. 38.071, § 2.[1] In the tape, the complainant, appellant's stepdaughter, stated that appellant had engaged in sexual acts with her. After the State rested, appellant called the complainant to testify. The trial judge refused to allow appellant to lead the complainant, characterizing her as appellant's witness. Nevertheless, the complainant totally repudiated her taped statement, and denied that appellant had done the acts alleged.

The second point of error contends that the evidence was insufficient.

■ It is undisputed that the evidence in this case would be insufficient, but for the complainant's unsworn, repudiated, hearsay statements on videotape.[2] No trial objection was made to the videotape based on hearsay or denial of confrontation.[3] The

---

1. Ch. 599, sec. 1, 1983 Tex.Gen.Laws 3829, *amended by* ch. 998, sec. 1, 1987 Tex.Gen.Laws 3378, *amended by* ch. 55, sec. 1, 1987 Tex.Laws, 2nd Spec.Sess. 180.

2. We note that Tex.R.Crim.Evid. 801(e)(1)(D) provides that a statement is not hearsay if taken and offered in accordance with Tex.Code Crim. P.Ann. art. 38.071; however, such provision became effective on September 1, 1986, more than two months after appellant's trial.

3. Such objections would have been meritorious. *See Long v. State,* 694 S.W.2d 185 (Tex.App.— Dallas 1985), *aff'd,* 742 S.W.2d 302 (Tex.Crim. App.1987). The court of appeals decided *Long* a year before this trial, time enough to alert appellant's counsel to the statute's unconstitutionality. Moreover, most attorneys, even before the court of appeals opinion in *Long,* would have raised these basic objections, notwithstanding that at least five court of appeals decisions had overruled such challenges to the statute before appellant's trial. *Newman v. State,* 700

S.W.2d 307 (Tex.App.—Houston [1st Dist.] 1985), *rev'd,* 743 S.W.2d 641 (Tex.Crim.App. 1988); *Mallory v. State,* 699 S.W.2d 946 (Tex. App.—Texarkana 1985), *vacated,* 752 S.W.2d 566 (Tex.Crim.App.1988); *Tolbert v. State,* 697 S.W. 2d 795 (Tex.App.—Houston [1st Dist.] 1985), *aff'd on other grounds,* 743 S.W.2d 631 (Tex. Crim.App.1988); *Jolly v. State,* 681 S.W.2d 689 (Tex.App.—Houston [14th Dist.] 1984), *rev'd,* 739 S.W.2d 345 (Tex.Crim.App.1987); *Alexander v. State,* 692 S.W.2d 563 (Tex.App.—Eastland 1985), *vacated,* 753 S.W.2d 401 (Tex.Crim.App. 1988); *see also Coy v. Iowa,* — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

The record does not reflect why appellant's court-appointed trial attorney failed to object to the videotape as hearsay or as a denial of confrontation. Nor does the record reflect why appellant's new court-appointed appellate counsel has not raised a point of error alleging that the failure to object constituted ineffective assistance of trial counsel. Nevertheless, these considerations are moot, in view of our disposition of the second point of error.

sole objection was that the proper predicate had not been laid.

We note that unobjected to hearsay evidence, such as the videotape in the present case, was considered incompetent, not merely inadmissible, in Texas until June 4, 1986, 12 days before appellant's trial. On that day, *Chambers v. State,* 711 S.W.2d 240, 245–47 (Tex.Crim.App.1986), was decided and held that inadmissible hearsay evidence admitted without objection would no longer be treated as incompetent, but would be considered as having probative value and would be considered in determining the sufficiency of the evidence.

Appellant argues that the videotaped hearsay evidence was insufficient, as a matter of law, to support the judgment because 100% of the sworn testimony in court from the complainant was that appellant was not guilty. Appellant asks us to hold that the complainant's in-court, sworn repudiation of her out-of-court, unsworn videotape wholly destroyed the videotape's probative value.

The only eyewitnesses to the crime alleged were appellant and the complainant. The complainant consistently testified that the crime did not occur. Appellant testified, but was never asked to admit or deny the crime.

A physician examined the complainant the day after the alleged offense and found that her hymenal ring was open, consistent with penetration by a penis, and that her exterior genitalia were normal, as would be consistent with recurring sexual activity over a period of time. There was no medical evidence, however, that appellant had engaged in the sexual activities with the complainant.

The complainant, who was 12 years old at the time of trial, told the police officer conducting the videotape that appellant had been molesting her since the age of seven. The complainant's 14–year–old half brother testified as a defense witness that appellant would often send him outside the family home, leaving appellant and the complainant alone inside. The complainant's 10–year–old cousin, Derrick Herbert, testified in the State's rebuttal that he once saw

the complainant lying naked on a bed, while appellant was nearby putting on his underwear. The State conceded during jury argument, however, that that was not the incident alleged in the indictment or the one testified to on videotape by the complainant. It was rebuttal evidence, and the event described was never shown to have occurred on the date alleged in the indictment, within any particular year, or within the period of limitations for this offense. The only other evidence the State points to in support of the judgment is the complainant's statements to her aunt and grandmother that appellant had been "messing" with her. Finally, the complainant testified that appellant had asked her not to testify against him and that she loved appellant because he was a good stepfather to her.

The State relies on *Combs v. State,* 643 S.W.2d 709, 716 (Tex.Crim.App.1982), as authority that this case presents no more than a conflict in the evidence that the jury resolved against appellant. *Combs,* however, was not a case where the State relied wholly on repudiated, unsworn, out-of-court hearsay as the sole evidence of guilt.

In *State v. Moore,* 485 So.2d 1279 (Fla. 1986), the Supreme Court of Florida was asked this certified question:

> Is a prior inconsistent statement sufficient evidence to sustain a conviction when a prior inconsistent statement is the only substantive evidence of guilt?

In *Moore,* the prosecution's prior inconsistent statements consisted of the sworn grand jury testimony of two witnesses. These witnesses testified in person at two murder trials that the defendant, Moore, was not guilty and that they had lied under oath to the grand jury because of police coercion. The court held that, "[i]n a criminal prosecution, a prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt." 485 So. 2d at 1281. The court quoted with approval from *United States v. Orrico,* 599 F.2d 113 (6th Cir.1979), as follows:

> But the Government having offered such statements as the sole evidence of a central element of the crime charged, we hold that the Government has failed to

sustain its burden of proof of guilt beyond a reasonable doubt.

599 F.2d at 119.

The Florida Supreme Court concluded:

We agree that the risk of convicting an innocent accused is simply too great when a conviction is based entirely on prior inconsistent statements.

This case is a stronger one for reversal than *Moore* because: (1) the prior inconsistent statement here was unsworn, and was made outside of a judicial proceeding, whereas in *Moore*, it was sworn before a grand jury; (2) there is one witness' prior inconsistent statement here, whereas two witnesses testified to guilt in *Moore*; (3) the prior inconsistent statement here was the sole evidence of *all* elements of the crime charged, not merely of "a central element," as in *Orrico*. One justice specially concurred in *Moore*, and wrote that "a different issue" would be presented if the prior inconsistent statements had been made in a proceeding where the defendant had an opportunity to confront and cross-examine witnesses. 485 So.2d at 1282 (Overton, J., concurring). The complainant's prior inconsistent statement here came from a proceeding where there was no opportunity for confrontation and cross-examination.

A Texas court has recently held that evidence like that here is insufficient to support a verdict of guilty. In *Villalon v. State*, 739 S.W.2d 450 (Tex.App.—Corpus Christi 1987, pet. pending), the evidence of sexual assault, similar to the instant case, came from a school nurse, the complainant, the complainant's mother, and a medical doctor. No videotape was involved. The complainant testified at trial inconsistently with her earlier account to the school nurse. The nurse testified that the child complainant had stated that she had been "raped," but at trial the complainant did not testify to penetration. The nurse's testimony, recounting the complainant's prior inconsistent hearsay statement, was the sole proof of penetration. Such hearsay was admissible under Tex.Code Crim.P. Ann. art. 38.072. Villalon claimed on ap-

peal that the evidence was insufficient to prove penetration. The court wrote:

[I]t would be an over broad interpretation of the statute to hold that the hearsay statement given to another one year or more after the event in question is sufficient to convict, where the victim herself testified articulately and did not corroborate but, in fact, contradicted the crucial hearsay statement concerning penetration.

. . . .

In our case, the hearsay was contradicted by the victim and was not corroborated by any of the other evidence.

In the absence of extenuating facts, which are not present in this case, *it would be irrational to hold that unsworn hearsay evidence has the same, or more, probative value than the sworn testimony of the party who made the hearsay statement and had actual knowledge of the facts.*

We recognize that cases involving abuse of small children often create special problems of proof and each case must be decided and generally restricted to its own particular facts. In this case, *we hold that the nurse's testimony of hearsay statements of the victim is not sufficient, as a matter of law, to establish penetration when the victim's testimony about the same fact is insufficient to establish it.*

739 S.W.2d at 454 (emphasis supplied).

The court in *Villalon* distinguished *Chambers v. State*, 711 S.W.2d at 240, because in *Chambers*, all the other facts were consistent with guilt and there was no contradiction, express or implied, in the truth or accuracy of the hearsay. *Id.* This distinction is even more pertinent in the present case, where we have not merely a contradiction, but a total repudiation of the hearsay.

■ This Court has twice recently held that out-of-court, unsworn hearsay, later repudiated in court, was insufficient to support a verdict of guilt when it was the only evidence linking the defendant to the crime. *See Machado v. State*, 753 S.W.2d 252

(Tex.App.—Houston [1st Dist.] 1988) (arson case); *Fernandez v. State*, 755 S.W.2d 220 (Tex.App.—Houston [1st Dist.] 1988) (theft case).

■ Even viewing this evidence in the light most favorable to the verdict, we conclude that no rational finder of fact could be convinced of appellant's guilt beyond a reasonable doubt. Only by disregarding all sworn testimony from all eyewitnesses could the jury have found beyond a reasonable doubt that appellant exposed his genitals to the complainant on March 9, 1986, as alleged. Only by relying wholly on repudiated prior inconsistent statements could the allegations have been proved. To find this evidence sufficient would make the trial a mere formality, the only evidence of guilt having been produced before indictment, ex parte, out of court, without oath, without confrontation, without notice, and then repudiated. As the court held in *State v. Frank*, 298 N.W.2d 324 (Iowa 1980):

> The rule that it is for the jury to reconcile the conflicting statements of a witness does not apply where the only evidence in support of the controlling fact is that of a witness who so contradicts himself as to render the finding of facts thereon a mere guess.

*Id.* at 329.

Point of error two is sustained.

The judgment of the trial court is reversed, and a judgment of acquittal is ordered.

DUNN, J., dissents.

DUNN, Justice, dissenting.

I respectfully dissent. Initially, it is important to remember that we are dealing with a "recantation" of a videotape of a child faced with vulnerabilities attendant to children that would not be the same if it were an adult recantation. Also, this is a case of extenuating circumstances and facts that surround this child's "recantation" that should be left to the jury. As pointed out by the *Villalon* court cited by the majority "each case must be decided

and generally restricted to its own particular facts." 739 S.W.2d at 454.

As to the sufficiency of the evidence, I disagree with the majority that the complainant "testified unequivocally" that the appellant had not done the acts alleged. Further, I disagree that the only eyewitnesses to the offense were appellant and the complainant.

The following testimony is pertinent in support of this dissent:

1) On cross-examination by the State, the complainant stated, "I don't know" in answer to the State's question of why she had said that it did not happen. When asked "didn't you tell me you were afraid something was going to happen to your mother?" she answered "I don't know." The district attorney then asked, "You are not saying you didn't tell me though, are you?" and the complainant answered "No." She also stated that her mother had taken her to visit the appellant while he was in jail. She agreed with the district attorney that she and the appellant had talked about the case and that the appellant had asked her to say that "it did not happen." She testified that she had written a letter to her aunt after the incident saying in effect that if he did anything more to her she would hit him.

2) She agreed, on cross-examination by the State, that she told the district attorney on Thursday before the trial that the appellant had done all the things to her that she said he had done in her original statement and that she was scared. Further, Officer Taylor, Rita Herbert, the complainant's grandmother, and the doctor all testified that the child had told them that the appellant had been molesting her.

3) Additional testimony that supports the sufficiency of the evidence came from complainant's mother while testifying for the defense when she stated that the child had described to her some of the "things" that the appellant had done to her, and that the things the child described to her were the same things that appellant had done to her in their sexual relationship. (Note: the appellant himself confirmed that the child could not have known about these things

because the child had never seen him and his wife when they engaged in sex.)

4) The appellant took the stand in his defense and at no time denied doing the act charged. He stated that: he had a good relationship with the complainant; he never disciplined her; and there was no reason for her not to like him. He agreed that: he talked with her twice while he was in jail; his wife worked at night; he was unemployed; and he was with the complainant during these times; and the child had never seen him and his wife when they engaged in sex.

5) The State's witness, Derrick, age 10, Lisa Herbert's son, testified that when he visited the appellant's household on a Saturday, appellant sent him and Charles, complainant's brother, to the store. When they came back, he went into the house, and Charles stayed in the street with some of his friends. He began looking for the appellant and opened a door and saw appellant getting up and the complainant lying on the bed naked. He said that as the appellant got up, he was trying to put on his underwear.

The majority urges that this event testified to by Derrick was never shown to have occurred on the date alleged in the indictment, or within the period of limitations for this offense. I disagree. The applicable period of limitations for this offense is five years. Tex.Code Crim.P. art. 12.01(3)(C).[1] The evidence shows that the complainant's mother stated that on *June 16, 1986,* the date of trial, her brother, Chester Herbert, was living with her and the appellant until about "two and a half to three years ago." Chester, was single at the time, and was "laying around the house and wouldn't get up and find a job." So they asked him to leave. Chester's wife, Lisa Herbert (Derrick's mother), testified that she first met Chester two years before the June 16, 1986 trial and had married him about seven months before the trial. The indictment alleged that the incident of indecency with a child occurred on or about March 9, 1986, approximately two years and 10 months after Chester moved out of appellant's

home, and one year and nine months before March 9, 1986, when Chester *first met* and later married Lisa, Derrick's mother. Derrick's mother also testified that after the March incident, neither she nor her son went over to appellant's home.

Considering this time frame, any visit by Derrick in the appellant's home would have to have occurred between June 1984 and March 9, 1986, which would place the incident described by Derrick within the period of limitations. This would be consistent with Derrick's testimony that only appellant, the complainant, and Charles were in the home at the time of the incident.

I agree that a witness' recantation of testimony is viewed with utmost suspicion. However, all of the recantations in this case occurred *prior* to trial and *during* trial. Also, the court, on admitting all inconsistent statements of the complainant into evidence stated that "the videotape was offered as to the truth of the matter asserted." The question raised here by the complainant's recantation goes to her credibility. The credibility of a witness is to be determined by the jury. *Minx v. State,* 615 S.W.2d 748, 749 (Tex.Crim.App.1981).

This is *not* a case where the only evidence in support of a fact is the recanted testimony. The mother's, as well as Derrick's testimony, corroborates and supports the fact of indecency with the complainant. Further, the trial testimony of the complainant supports the fact that the recantation is tainted with equivocations, and the evidence in the record contains *explanations* of how the recantation may have come about, i.e., exposure of the child to the appellant, his request that she recant, isolation of the child by her mother from her normal relations with her aunts, cousins and grandmother, and the fact that the district attorney had to secure a court order to force the mother to bring the complainant in for an interview before trial. These reasons and explanations of the recantation gave the jury full opportunity to judge the credibility of the witness and ascertain the veracity or falsity of testimo-

1. Ch. 330, § 1, 1985 Tex.Gen.Laws 1393, *amended by* ch. 716, sec. 1, 1987 Tex.Gen.Laws 2591.

ny on the videotape as compared to the recantation.

I would hold that the evidence was sufficient beyond a reasonable doubt and overrule appellant's second point of error.

In addition, I feel that the majority's classification of the videotape as *"unsworn"* testimony is without merit.

The concern by the majority that the testimony is unsworn is without merit for the reason that the person interviewing the complainant properly established that the child knew the difference between right and wrong. Further, there was no objection to the admissibility of the tape because the complainant was incompetent and not sworn. Our courts have held that failure to administer an oath to a child does not take away the trustworthiness of that child's testimony, and such testimony is just as acceptable as "sworn testimony." *See Provost v. State*, 514 S.W.2d 269 (Tex. Crim.App.1974). Further, failure to object to unsworn testimony waives error, if any. *Brown v. State*, 171 Tex.Crim. 692, 353 S.W.2d 425 (1961) (op. on reh'g); *Spriggs v. State*, 163 Tex.Crim. 167, 289 S.W.2d 272 (1956) (op. on reh'g).

Finally, appellant's contention in his first point of error that:

> The trial court erred in ruling that the complaining witness was the appellant's witness and refusing the appellant an opportunity to confront and cross-examine his accuser at the trial of the case.

Article 38.071, § 2(b) in effect at the time this case came to trial provided:

> *If* the electronic recording of the oral statement of a child is admitted into evidence under this section, *either* party may call the child to testify, and *the opposing* party may cross-examine the child.

The videotape of the complainant was offered into evidence by the State. The appellant elected to call the complainant as his witness. He made no attempt to advise the court that the complainant was being called as an adverse witness or for any other purpose, such as impeachment.

This is not a case where cross-examination was denied; it was never requested. Appellant did not object, as in *Long v. State*, 742 S.W.2d 302, 304 (Tex.Crim.App. 1987), to denial of confrontation. Nor did he object, as in *Lawson v. State*, 697 S.W. 2d 803 (Tex.App.—Houston [1st Dist.] 1985), *vacated*, 752 S.W.2d 565 (Tex.Crim. App.1988), that he was being denied a contemporaneous cross-examination. Rather, appellant complains that the examination of the complainant was limited because leading questions were not permitted.

I would hold that this complaint is without merit for two reasons. First, appellant made no bill of exceptions to show what further beneficial evidence he would have elicited if the leading questions had been allowed. Thus, nothing is presented for review. *Stewart v. State*, 686 S.W.2d 118, 122 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985). Second, assuming appellant is entitled to ask leading questions under art. 38.071, sec. 2(b) without advising the court what he planned to do, an erroneous limitation on cross-examination of a witness does not fall within the limited category of constitutional errors that are deemed prejudicial in every case. *United States v. Owens*, —— U.S. ——, 108 S.Ct. 838, 98 L.Ed. 2d 951 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In *Van Arsdall*, the court held that the trial judge retains wide latitude insofar as confrontation is concerned, and can impose reasonable limits. The appellant is not entitled to any examination "to whatever extent the defense may wish." The court held that a reviewing court may determine that the alleged error is harmless beyond a reasonable doubt.

Reviewing the complainant's testimony from the standpoint of harm, I note that the complainant responded to appellant's questioning by testifying that appellant did not commit the offense alleged and that she did not equivocate in her answers until cross-examination by the State. The appellant could have asked that he be allowed to cross-examine under the adverse witness rule when the complainant began to equivocate after the State's cross-examination,

but he did not choose to do so. During direct examination, she explained her false accusations on the videotape and to her grandmother as being made out of anger at appellant and her mother. An investigator hired by appellant also testified that he interviewed the complainant, and she stated that the offense did not occur and signed a statement to that effect. In addition, all of her statements recanting the videotape were admitted into evidence. The complainant confirmed these facts and denied having been tricked or forced into making the statements to the investigator.

In light of the failure to make a bill of exceptions and the extremely favorable evidence that was brought out during defense questioning of the complainant, I would hold that there was no reversible error and overrule the first point of error.

I would affirm the conviction.