**Wallace MALLORY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 061–86.**

Court of Criminal Appeals of Texas, En Banc.

June 15, 1988.

**567**

Thomas R. Newman, Texarkana, for appellant.

John F. Miller, Jr., Dist. Atty. and James Elliott, Asst. Dist. Atty., Texarkana, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

Appellant was convicted by a jury of aggravated sexual assault and punishment was assessed by the jury at twenty-five years in the Texas Department of Corrections. The indictment alleged that the appellant "intentionally and knowingly cause[d] the penetration of the vagina of R___ S___, a child younger than 14 years of age who was not the spouse of said defendant by penetrating the vagina of R___ S___ with the sexual organ of Wallace Mallory...."

The testimony of the victim was introduced into evidence through a videotaped recording of an interview with the victim, made in compliance with Art. 38.071, § 2, V.A.C.C.P. Rejecting the appellant's claim in his direct appeal that the child videotape statute was unconstitutional as a violation of his right of confrontation, the Sixth Court of Appeals held that Art. 38.071, § 2, was constitutional; therefore, the trial court did not err when it admitted the videotape into evidence. *Mallory v. State,* 699 S.W.2d 946 (Tex.App.—Texarkana 1985, *pet. granted*).

In his petition for discretionary review the appellant continues his attack on the constitutionality of Art. 38.071, § 2, *supra.* We granted his request for review to make that determination pursuant to his claimed reason for review that the court of appeals "decided an important question of state or federal law which has not been, but should be settled by the Court of Criminal Appeals." Rule 200(c)(2) Tex.R.App.Pro.

During the trial the following facts were presented: At the time of the offense, the victim was a seven-year old girl. On September 5, 1983, the date of the alleged

offense, the appellant was paid by the parents of the victim to baby-sit their children.

On September 12, 1983, the victim's mother noticed a vaginal discharge in the victim's underwear. On September 15, 1983 she took the victim to Dr. Gurav in New Boston. The doctor ran some tests and examined the victim for evidence of trauma. At trial, after being called to the stand by the appellant, Dr. Gurav testified that the cultures which he took from the victim showed the presence of gonococci bacteria. Gurav stated that if the culture was "a male smear, it is gonorrhea; if it is a female patient since the culture did not grow, I cannot swear if it is positive or negative." Dr. Gurav testified that he prescribed penicillin for treatment of the victim's infection. On direct examination, Gurav stated there was no evidence of trauma. However, on cross-examination, he admitted that if the assault occurred on the alleged date of September 5th, the trauma would have healed by the time of the September 15 examination.

On October 7, 1983, the victim's mother took her to be examined by a physician in Texarkana, Dr. Ayers. At trial, the mother testified that Dr. Ayers examined the victim and diagnosed her as having gonorrhea. The appellant made no objection to the admission of this hearsay statement. On October 8th, the victim told her mother what had happened between her and the appellant on September 5, 1983. On the same day, the victim's mother reported it to the police.

At that time, the victim's mother took her to see a Ms. Sann Sisco of the Department of Human Resources. Ms. Sisco videotaped a statement by the victim in which the child claimed that she had been sexually assaulted by the appellant on September 5th. Four days prior to the trial, Ms. Sisco made a second similar videotape of the victim's statement. The latter videotape was admitted into evidence.

On the tape, the victim stated that she was sexually assaulted by a black man named "Slick," who was identified as the appellant. Her description of what physically happened to her was conveyed by the use of anatomically correct dolls. Her verbal description was that the appellant "got on top of me and he stuck his ding aling [sic] in mine." Appellant objected to the admission of the tape as violating his right of cross-examination. The trial court overruled the objection. The victim did not testify during the trial.

While the appellant's petition for discretionary review was pending, this Court decided *Long v. State,* 742 S.W.2d 302 (Tex. Cr.App.1987), *cert. denied,* ── U.S. ──, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988). In *Long* we concluded that Art. 38.071, § 2, *supra,* constituted an unconstitutional infringement upon a defendant's right of confrontation as secured by the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Texas Constitution. The conclusion we reached in *Long v. State, id.,* is equally applicable to this case; therefore, we find that the trial court erred when it admitted into evidence the videotaped testimony of the child.

Determining that the trial court erred in admitting the victim's videotaped testimony into evidence rather than concluding our examination of the case begins it. In *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) the U.S. Supreme Court, based upon *Bruton v. U.S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968), decided that a trial court violated the defendant's Sixth Amendment right of confrontation when it admitted into evidence the confessions of three co-defendants, only one of which testified. Rather than automatically reverse the defendant's conviction the Court, citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), stated that because the "case against Harrington was so overwhelming that we conclude that this violation of *Bruton* was harmless beyond a reasonable doubt...." *Harrington v. California, supra,* 395 U.S. at 254, 89 S.Ct. at 1728. Thus, the Supreme Court applied a harmless error test to admitted violations of a defendant's right of confrontation.

Recently, in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court affirmed its po-

sition by applying the harmless error analysis of *Chapman v. California, supra,* to another violation of a defendant's right of confrontation. In this case, the trial court unconstitutionally restricted the defendant's cross-examination of a state's witness. The Court simply held that "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other confrontation clause errors, is subject to *Chapman* harmless-error analysis." *Id.*

█ We see no reason to depart from this conclusion. Although the right of confrontation is vital to an ordered criminal justice system, and of constitutional magnitude it is nonetheless a trial right. As such, a violation of such a right does not invariably tarnish the truth finding process to the extent that automatic reversal is called for in every case. Therefore, even in instances of constitutional violations of the right of confrontation a harmless error analysis is necessary and appropriate.

In *Chapman v. California, supra,* the U.S. Supreme Court stated that "before a federal constitutional error can be harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.,* 386 U.S. at 24, 87 S.Ct. at 828. *Chapman v. California, supra,* has been cited extensively by this Court since 1967. The *Chapman* test for harmless error, however, has experienced numerous semantic modifications. For example, in *Cole v. State,* 484 S.W.2d 779 (Tex.Cr.App.1972), the Court stated: "Before an error of constitutional dimension can be held to be harmless error, however, the reviewing court must be able to declare that it was harmless beyond a reasonable doubt." *Id.,* at 783. Somewhat differently, in *Bass v. State,* 622 S.W.2d 101 (Tex. Cr.App.1981), without citing *Chapman v. California, supra,* the Court commented that "the question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction." *Id.,* at 104. In *Maynard v. State,* 685 S.W.2d 60 (Tex.Cr.App.1985), *Chapman v. California, supra,* was cited in support of the following analysis: "The test for harmless error is not whether a conviction could have been had without the improperly admitted evidence, but whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.,* at 67.

The comparative, yet distinguishable language utilized to express the tests for harmless error, is not indicative that they are erroneous or that they departed significantly from the analysis endorsed by the Supreme Court in *Chapman v. California, supra.* On the contrary, under the facts of the case each test was properly expressed. However, the elective propriety of expressing the test for harmless error in a less than uniform fashion is no longer available. Rule 81(b)(2) of the unified Rules of Appellate Procedure has eliminated such discretion.

In 1983 the Senate–House Select Committee on the Judiciary made a number of recommendations relative to improving the States's judicial system. Among the numerous recommendations was that the civil and criminal rules of appellate procedure be unified as much as possible. See: Hambleton and Paulsen, *"New Rules: A Pocket Introduction,"* 49 *Tex.Bar Journal* 554 (1986). Responding to the Legislature granting this Court rule making authority (Art. 1811f V.A.T.S.), on December 18, 1985, we approved the new rules. They became effective on September 1, 1986. Since September 1, 1986, the test for harmless error, with some exceptions not applicable to this case, is Rule 81(b)(2) which provides as follows:

> *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Id.*

In examining Rule 81(b)(2), *supra,* one observes that it is progressive. That is, first, the appellate court must find from the record that an error exists. Second, if an error is discovered the appellate court is at that point obligated to reverse the judg-

ment. Third, the necessity of reversing the judgment is obviated only if "the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *Id.* In other words, if the appellate court cannot make that determination beyond a reasonable doubt it is required to reverse the judgment.

■ We must now determine if the error of the trial court in allowing the child's videotaped testimony to be introduced into evidence was harmful to the appellant under Rule 81(b)(2), *supra.*

The most prevalent factual distinction between this case and the *Long* case is that the appellant in this case voluntarily executed the following confession which was admitted into evidence during the defendant's trial:

"My name is Wallace Junior Mallory. I am 23 years of age and my current address is 2122 Taylor in Texarkana, Texas. I am giving this statement to Louis Aycock, who has identified himself to me as a police officer with the Texarkana, Texas Police Dept. I am giving this statement after being advised of my rights by Justice of the Peace, Ben C. Grigson. I did understand my rights that Judge Grigson read to me. A couple of months ago I was baby sitting for Vickie Seefieldt at her house at 1727 W. 8th. When I got to the house her girls, R. and C. went outside to play. They played outside till it started getting dark. I went in the house and was watching television. When they got tired of playing outside they came in the house. I think that this was about 8:00 p.m. When they came in the house they watched television. Then about 15 after 8:00 I told them to go in there and get ready for bed. They got ready for bed. They put their night gowns on. Then I told them that they could watch television. A nasty picture was on t.v., but I don't remember the name of it. Then R. was watching a man and woman doing sex on t.v. Then R. started making whistling sounds at me. I looked over at her and she asked me if she could go and get something out of the icebox. I told her that she could. I was sitting in a chair by the window where I could look out for her mother and dad and still be able to watch t.v. R. drank what she got out of the icebox. She laid down on the couch. Then I heard R. doing a whistling sound and I looked over at her on the couch. She kind of waved for me to come over to the couch, but I never did go over to her. She got up from the couch and came over to where I was and sat in my lap. Then she started kissing on me and I told her to quit and get down. Then she started feeling on me. Then she started unzipping my pants. Then she knocked me out of the chair. Then she got on top of me down there on the floor. Then she pulled my peter out of my pants. Then she told me to get on top of her. I got on top of her and she started hunching up and down. And that is all that happened. This statement is true and correct to the best of my knowledge. One thing that I forgot to mention is that R. told C. to go to bed at about 9:00 p.m., but she stayed up. I think that when this happened C. was about 2 years old and R. was about 7 or 8 years old. That's all. I cannot read, but I can write my name. This statement was read back to me by Detective Louis Aycock in the presence of Mr. Frank Couch and Mr. Bill Harris. This statement is true and correct.

Prior to and during the making of this statement I knowingly, intelligently and voluntarily waive the rights as received in the warning given as set out above."

At the outset of this opinion it was noted that the appellant was indicted for "penetrating the vagina of R_____ S_____ with [his] sexual organ...." The "confession" does not concede the truth of that allegation. In fact, his "confession," which was introduced by the State, implicity disputes the allegation of penetration. Thus, unlike the factual composition of *Harrington v. California, supra,* and *Delaware v. Van Arsdall, supra,* where the evidence of those defendants' guilt was overwhelming, the only evidence that actually supports the State's allegation was the videotaped testi-

mony of the victim, and under *Long v. State, supra,* this evidence should not have been admitted into evidence. It therefore follows that we cannot conclude "beyond a reasonable doubt that the error made no contribution to the conviction...." Rule 81(b)(2), *supra.*

This is not to say, however, that the erroneous admission of a youthful victim's videotaped testimony will invariably be harmful. Quite the contrary, in *Tolbert v. State,* 743 S.W.2d 631 (Tex.Cr.App.1988), we held that in a bench trial "sufficient proper evidence was admitted to prove the elements of the crime charged and to sustain the judgment." *Id.,* at 634–635. In the present case the only evidence that was admitted that proved "the elements of the crime charged ...," *id.,* was admitted in violation of the defendant's right of confrontation under the Sixth Amendment to the United States Constitution.

Based upon the above, the judgments of the trial court and the court of appeals are reversed and the cause remanded to the trial court.

TEAGUE, J., concurs in result.

W.C. DAVIS, Judge, concurring.

For the reasons stated in my dissent in *Long v. State,* 742 S.W.2d 302 (Tex.Cr.App. 1987), I adhere to my belief that Art. 38.-071, § 2, V.A.C.C.P. is a constitutional statute which does not improperly impact upon a criminal defendant's right of confrontation. However, since a majority of this Court has decided otherwise, and in view of the fact that the only evidence actually supporting the State's case was the videotaped interview of the child victim which was improperly admitted under the rationale of *Long,* supra, I concur in the result reached by the majority after Rule 81(b)(2) analysis.

WHITE, Judge, dissenting.

The majority opinion relies on the recent decision of this Court in *Long v. State,* 742 S.W.2d 302 (Tex.Cr.App.1987), to reverse the appellant's conviction. At that time I joined the dissent of Judge McCormick to the holding of *Long.* My opinion has not changed, though I now accept that *Long* is a final decision. However, I disagree with the majority's decision that the *Long* error in the instant case harmed the appellant. I would hold, instead, that the error was harmless under Tex.R.App.Pro. Rule 81(b)(2).

The majority discusses the fact that the only specific evidence directly proving the penetration of the victim's vagina was contained in the videotaped testimony of the victim. In that tape, she said the appellant, "got on top of me and stuck his ding aling in mine." Because the majority feels this is the only direct evidence of the alleged penetration, they concluded that its admission, beyond a reasonable doubt, contributed to the conviction of the appellant.

The videotaped testimony may have been more direct than the rest of the State's evidence, but it was not specifically direct evidence of the alleged violation. At no time did the victim specifically state on the tape that her vagina was penetrated by the sexual organ of the appellant. She used the dolls to show the relative positions of her and the appellant during the assault, and to point out that the appellant's "ding aling" was his penis and that hers was her genital area. The victim undoubtedly came as close as a child of her years could to definitely enunciating the allegations in the indictment. But the most that can be said for her testimony was that it was more direct than the State's other evidence. This is not sufficient for me to conclude, beyond a reasonable doubt, that the videotape contributed to the verdict. Rule 81(b)(2), *supra.*

Considering the other evidence presented by the State at trial, I believe that the erroneous admission of the videotape was harmless. There was evidence that the victim had become infected with gonorrhea (the victim's mother's account of her conversation with Dr. Ayers of Texarkana). There was also evidence that the victim made an outcry to her mother on the day after her mother's conversation with Dr. Ayers. In this outcry she told her mother what happened between her and the appel-

lant. Lastly, we have the confession of the appellant. Though he also does not specifically state that he penetrated the victim's vagina, the appellant made an admission of sexual intercourse with the victim. This admission may have been somewhat self-serving, in that appellant blamed the victim for initiating the sexual activity, but it placed the appellant engaging in a sexual assault with the victim at the right time and in the right place. Upon this evidence, and without the videotape, a rational trier of fact could have found beyond a reasonable doubt that the appellant was guilty of the alleged aggravated sexual assault. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As such, appellant has not established that the erroneous admission of the videotape contributed, beyond a reasonable doubt, to his conviction. *Self v. State,* 709 S.W.2d 662 (Tex.Cr. App.1986).

I also believe that the record in the instant case shows, beyond a reasonable doubt, that the admission of the videotape did not contribute to the punishment which appellant received. Rule 81(b)(2), *supra.* The appellant was sentenced to twenty-five years in the Texas Department of Corrections, even though he faced a maximum of life imprisonment. Although the appellant was not shown to have a criminal record, the lack or absence of a prior conviction is only a single factor in the analysis of error. *Becknell v. State,* 720 S.W.2d 526 (Tex.Cr. App.1986), at 530. The record shows that the victim was a seven year old child and the appellant was an adult male entrusted with the care of the victim. The victim was shown to have suffered from a vaginal discharge and venereal disease as a result of the assault. Considering that the appellant confessed to the offense, and that he received a sentence in the lower range of punishment for this offense, appellant was not harmed by the admission of any tainted evidence during the punishment stage of his trial. *Self, supra;* and *Becknell, supra.*

I would overrule the appellant's ground for review and affirm the judgment against

him. I dissent to the majority's decision to rule otherwise.

McCORMICK, J., joins this dissent.