**Robert POWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–84–00646–CR.**

Court of Appeals of Texas, Dallas.

Aug. 8, 1989.

Lawrence B. Mitchell, Dallas, for appellant.

Jeffrey B. Keck, Dallas, for appellee.

Before McCLUNG, LAGARDE and BURNETT, JJ.

**1.** Unless otherwise indicated, all further rule references are to the Texas Rules of Appellate Procedure.

REMAND FROM COURT OF
CRIMINAL APPEALS

LAGARDE, Justice.

In our original opinion in this case, we held that the videotaped testimony of the five-year-old victim, admitted pursuant to sections 4 and 5 of article 38.071 of the Texas Code of Criminal Procedure, violated Powell's right to confrontation under the sixth amendment to the United States Constitution and article 1, section 10, of the Texas Constitution. The Court of Criminal Appeals agreed with our analysis; however, pursuant to its decision in *Mallory v. State*, 752 S.W.2d 566 (Tex.Crim.App.1988), that court remanded this case to this Court to conduct a harm analysis as set out in rule 81(b)(2) of the Texas Rules of Appellate Procedure 765 S.W.2d 435.[1]

The record in this case, independent of the videotaped testimony of the complainant, shows that the State first called the complainant's father to testify. He testified that his daughter, R___ L___ J___ (hereinafter RLJ), was four years old on November 2, 1983, the date of the alleged offense. On that date, RLJ's brother came running up to her father and stated that "a man hurt [RLJ]." RLJ then came running around the corner and said, "Daddy, don't let that man hurt me no more." She then led her father to the playground behind their apartment where the incident had occurred, but the man was no longer there. She further elaborated by telling her father that, "A man stuck his hands down my shorts." She identified the man to her father as "grandpa man," and she showed her father where he lived. RLJ's father then notified the police.

Tommy R. Murphy, a Dallas police officer, arrived on the scene and spoke to RLJ. RLJ told Murphy that the man who assaulted her had gone into apartment A at 908 Shadyside. Murphy knew who Powell, the alleged attacker, was. Murphy had previously had contact with Powell at that location and knew that Powell resided there at least part of the time. Murphy

went to apartment A, and Powell's wife let him in. Murphy saw Powell in the apartment, but he did not arrest him at that time. Instead, he took RLJ to Parkland Hospital and later obtained an arrest warrant for Powell.

Another Dallas police officer, Carol Gregston, testified that RLJ picked Powell's picture out of a photographic lineup on November 7, 1983—four days after the alleged assault. Gregston stated that the photographs were all in color and approximately the same size. Furthermore, the people depicted in the photographs were approximately the same age and had similar physical characteristics.

Jan Delipsey, assistant director of the Dallas County Rape Crisis Center, also testified that RLJ had picked Powell's picture out of a photographic lineup. Delipsey then testified regarding videotaping procedures and established the necessary predicate for admission of RLJ's videotaped testimony. The videotape of RLJ was then admitted into evidence. The State subsequently rested, and the defense called Powell's wife to testify.

She testified that Powell had spent the night of November 1, 1983, at her apartment and was there the next day (*i.e.,* the day of the alleged offense, November 2, 1983). She admitted that Powell was an alcoholic and spent most of his time on the streets. However, she testified that he would occasionally stay with her. She claimed that Powell was ill on the day of the alleged offense, and that he only went outside to smoke cigarettes. Although she admitted that the playground where RLJ was assaulted was very close to her back porch, she claimed that she watched her husband and that he never left the back porch while he was out there. The State, however, rebutted those claims with testimony from RLJ's father who testified that Powell's wife had told him that she could not tell what Powell was doing while he was outside smoking. Powell's daughter testified for the defense and the State called some other rebuttal witnesses during the guilt/innocence phase of the trial; however, because the testimony of those witnesses adds nothing to our determination of this case on remand, we will not review their testimony. With these facts in mind, we will examine the sole issue on remand.

■ As previously stated, the Court of Criminal Appeals remanded this case to this Court to conduct a harm analysis under rule 81(b)(2). Even in instances of violations of the constitutional right of confrontation, a harm analysis is necessary and appropriate. *Mallory,* 752 S.W.2d at 569. Rule 81(b)(2) provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2). In other words, if the appellate court cannot make the determination beyond a reasonable doubt, that the error made no contribution to the conviction or to the punishment, the court must reverse the judgment. *See Mallory,* 752 S.W.2d at 570. If, after excluding the videotaped testimony, other sufficient proper evidence was admitted to prove the elements of the crime charged, the videotaped testimony was not necessarily harmful. *See id.* at 571; *Tolbert v. State,* 743 S.W.2d 631, 634 (Tex.Crim.App.1988); *Foty v. State,* 755 S.W.2d 195, 196 (Tex.App.—Houston [14th Dist.] 1988, no pet.).

■ In the instant case, the elements that the State had to prove were that, on November 2, 1983, in the County of Dallas and the State of Texas, Robert Powell did then and there:

> unlawfully, knowingly and intentionally engage in sexual contact with R_____ L_____ J_____ hereinafter called complainant, a child then younger than 17 years and not then the spouse of the defendant, *by contact between the hand of defendant and the genitals of complainant,* with the intent to arouse and gratify the sexual desire of the defendant.

(Emphasis added.) Absent the videotape, there was never *any* evidence that the

hand of the defendant contacted the genitals of complainant. There was only evidence that Powell "stuck his hands down [RLJ's] shorts." The videotape, on the other hand, contained evidence showing that Powell did touch RLJ's genitals with his hand. Consequently, we cannot conclude, beyond a reasonable doubt, that the admission of the videotape did not contribute to the conviction. *See* TEX.R.APP.P. 81(b)(2). We reverse the trial court's judgment and remand this case for a new trial.