**Randy Doyle BURLESON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3-86-285-CR.**

Court of Appeals of Texas,
Austin.

June 20, 1990.

Julie C. Howell, Austin, for appellant.

Linda Icenhauer–Ramirez, Austin, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

GAMMAGE, Justice.

A jury found Randy Burleson guilty of aggravated sexual assault and assessed punishment at confinement for life in the Texas Department of Corrections. The tri-al court adjudged him guilty and sentenced him accordingly. We will affirm the judgment of the trial court.

The indictment alleged that Burleson "on or about the 26th day of May 1986 ... intentionally and knowingly cause[d] the sexual organ of ..., a child who was ... younger than 14 years of age and not the spouse of the Defendant, to contact the sexual organ of the Defendant," thus charging Burleson with the offense and elements set out in Tex.Pen.Code Ann. § 22.021(a)(5) (Supp.1985),[1] then in effect.

The trial court allowed the State to introduce, over Burleson's objections, the nine-year-old child-complainant's videotaped testimony made in compliance with Tex.Code Cr.P.Ann. art. 38.071, § 2 (Supp.1985),[2] then in effect. When the defendant called her as an adverse witness, the court ordered, upon the State's motion, that her testimony be taken in a room other than the courtroom and transmitted by closed circuit equipment to Burleson and the jury in compliance with art. 38.071, § 3,[3] then in effect.

Burleson brings eight points of error. In his first three points of error, Burleson argues that the two previously-cited sections of the Texas Code of Criminal Procedure are unconstitutional. He complains that the admission of the videotaped testimony; the State's failure to call the child during its case-in-chief, forcing him to call her as an adverse witness or waive all right and opportunity to confront and cross-examine her under oath; and the court's order requiring the child's in-court testimony be taken outside his and the jury's presence violated his constitutional rights of confrontation and due process of law under the United States and Texas Constitutions. U.S. Const. amends. VI, XIV; Tex. Const. Ann. art. I, §§ 10, 19. The State argues that sections 2 and 3 of art. 38.071 are not unconstitutional or alternatively, even if they are, the introduction of evidence ad-

---

1. 1983 Tex.Gen.Laws, ch. 977, § 3, at 5312 [Tex. Pen.Code § 22.021, since amended].

2. 1983 Tex.Gen.Laws, ch. 599, § 1, at 3828 [Tex. Code Cr.P. art. 38.071, since amended].

3. *Id.*

mitted in compliance with such constituted harmless error.

Subsequent to the appeal of this case, the Court of Criminal Appeals decided *Long v. State*, 742 S.W.2d 302 (Tex.Cr.App. 1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), and *Briggs v. State*, 789 S.W.2d 918 (Tex.Cr.App.1990). In *Long*, the Court held section 2 of art. 38.071 to be an unconstitutional infringement upon a defendant's right of confrontation and due process under both constitutions. Later in *Briggs*, the Court modified *Long*, holding that, although "in a given case [section 2] may operate to deprive an accused of confrontation or due process and due course of law, [it] is [not] unconstitutional on its face." *Briggs*, at 921.

The constitutionality of section 3 was not before the Court in either case; moreover, the Court stated in *Long*, "Whether [the] opportunity for cross-examination requires physical presence of both the child victim and the accused or just the attorney representing the accused is not the issue in this case; therefore, we express no opinion in this regard." *Long*, 742 S.W.2d at 318 n. 16. Nor has the Court of Criminal Appeals addressed the constitutionality of this provision in any other cases of which we are aware. We note that the Eleventh Court of Appeals held the provision is not unconstitutional. *Hightower v. State*, 736 S.W.2d 949 (Tex.App.1987, pet. granted).

◼ In keeping with the rule that courts do not address the issue of the constitutionality of a statute where consideration is not absolutely necessary to decide the case in which the issue is raised, *Turner v. State*, 754 S.W.2d 668, 675 (Tex.Cr.App.1988), we decline to address the constitutionality of section 3 or of section 2 as applied here. Rather, we overrule Burleson's points of error regarding these provisions on the ground that, under *Mallory v. State*, 752 S.W.2d 566 (Tex.Cr.App.1988), even if the application of the provisions constitutes a constitutional infringement, such infringement is subject to harmless error review, and, as we explain below, such error in this

case, if any, was harmless beyond a reasonable doubt.

◼ In *Mallory*, the Court of Criminal Appeals held that the unconstitutional introduction into evidence of a section 2 videotape is subject to the harmless error standard announced by the United States Supreme Court for constitutional errors in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Because an unconstitutional application of section 2 may deprive the defendant of his right to contemporaneous cross-examination of the child as well as his right, if any, to be physically present during the testimony, it is only logical that the harmless error standard should be applied in the case that section 3 may be unconstitutional on the ground that it deprives the defendant of his right to be physically present during the testimony, noting that his right to contemporaneous cross-examination is left undisturbed under section 3.

The harmless error standard to be applied under *Mallory* is that set out in Tex. R.App.P.Ann. 81(b)(2) (Pamp.1990). *Harris v. State*, 790 S.W.2d 568, 584 (Tex.Cr. App.1989). Rule 81(b)(2) provides:

> *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

In *Harris*, the Court attempted to "articulate a coherent standard for determining when an error is harmless [under Rule 81(b)(2)]." *Harris*, at 584. Because the rule focuses upon the error and not the remaining evidence, the function of the appellate court's harmless error analysis is not in determining whether the correct result was achieved despite the error; such an analysis "necessarily envisages what result it [the appellate court] would have reached as a trier of fact, thereby effectively substituting itself for the trial court or the jury." *Id.* at 585. The appellate court should, instead, "calculate as much as possible the probable impact of the error on

the jury in light of the other evidence.... If overwhelming evidence dissipates the error's affect [sic] upon the jury's function in determining the facts so that it did not contribute to the verdict then the error is harmless." *Id.* at 587.

In other words, while the presence of overwhelming evidence is not enough to automatically render an error harmless, that evidence may sufficiently dissipate the error's effect to render the error harmless. "If the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted." *Id.* at 588. The procedure for reaching the determination is to first identify solely the error and its effects and then, "ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Id.* at 587–588.

██ Applying this standard to the present case, we conclude beyond a reasonable doubt that the introduction of the videotaped testimony, the court's order requiring that the child testify outside Burleson's presence, and the effect of both made no contribution to the conviction or to the punishment. We will first address the possibly tainted evidence and then the remaining evidence.

In the videotape, the child described the act alleged in the indictment as well as other sexual acts forced upon her by Burleson, which occurred regularly beginning as early as age five and continued up to the time of his arrest. She did so with the aid of anatomically-correct dolls which she used for illustration.

Addressing the untainted evidence, the State's first witness, Sharon Jennings, a child protection worker for the Texas Department of Human Resources, testified that while she was investigating a complaint of child abuse of the child's brother in Burleson's home, the child told her that she wanted to talk to Jennings further, but was fearful of relating any more information to her while in the house. Jennings then visited the child at her school. In the interview the child told Jennings that

Burleson "takes me into the bathroom and touches me in my bad place." When questioned, she pointed to her vagina.

Dr. Beth Nauert, a pediatrician, testified that she examined the child at the request of the Department of Human Services. The examination revealed a gaping vaginal opening much wider than that found in an average nine year-old and a vaginal discharge which, following laboratory tests, revealed the presence of microplasma, an organism very often sexually transmitted. Dr. Nauert testified that less than ten percent of all normal children have microplasma; however, 25% to 40% of children who have been sexually abused have microplasma. She further testified that the examination results were "extremely compatible with previous penetration of the vaginal opening."

Following the viewing of the videotaped testimony of the child, the defendant called the child to testify. Upon cross-examination by the State, she referred to Burleson as "Dad" and stated that she told the truth in the videotaped interview. Further testimony included the following:

Q Do you remember talking about something in the bathroom?
A Mm-hmm.
Q Did your dad touch your bad spot?
A Yeah.
Q Did your dad make you lay down?
A Yeah. Sometimes.
Q And what you said on the tape about him putting his middle spot on you, was that true?
A Yeah.
Q Did that happen more than once?
A Sometimes.

Linda Browning, the child's mother, called by the defendant, testified that she and her children (including the child-complainant) previously lived with Burleson in Florida. Although unmarried, they held themselves out to be husband and wife. The child believes Burleson to be her father, but he is not. They later moved to Texas. At the time of Burleson's arrest, he, Browning, her children, Browning's sister to whom Burleson was then married,

and the sister's children from a previous marriage all lived together in the same house.

■ Browning testified that she encouraged or threatened Burleson to have sexual intercourse or contact with the child for the purpose of "helping" the child cope with her "abnormal interest in sex" which began at two weeks of age and continued throughout her nine years. She said she threatened to accuse Burleson of sexually abusing the child unless he complied and that he did so only because of her threats. She further testified that while they lived in Florida, Burleson was referred to authorities for child abuse, but the reports were unfounded.

Burleson testified that, for six-and-one-half years up until the time of his arrest, Linda Browning threatened him as she had testified. On cross-examination he testified:

Q   Did you ever cause, or isn't it a fact, did you cause to have your sex organ—your penis—to come into contact with [the child]. That's true, isn't it?

A   She does that.

Q   Little 9–year old ... [the child-complainant] does that, right?

A   Yes, sir.

Q   And you did this because of a threat.... What was this threat?

A   That I would get turned in for creating this offense.

          . . . .

Q   Mr. Burleson, are you guilty of these charges against you here today in Court. Did you cause your sexual organ to contact [the child-complainant]'s. Did you do that, sir? Yes or No?

A   [The child complainant] contacted me.

Burleson further testified, upon cross-examination, that he previously wrote a letter to the trial court admitting that he was guilty of the act alleged in the indictment.

Burleson defended—through his own testimony, the questioning of witnesses, and jury argument—on the grounds that the child was not to be believed and that he committed the acts out of fear of being unjustly reported to authorities by the child's mother for sexual abuse if he did not "satisfy" what he and her mother believed to be the child's "abnormal interest in sex."

Reviewing all the evidence and recognizing the possibly unconstitutional infringement upon Burleson's rights by the introduction of the videotape and the court-ordered section 3 procedures imposed upon him in calling the child to testify, and recognizing the effects of such upon the jury, we cannot say, in light of the other evidence, that a "rational trier of fact might have reached a different result if the [possible] error[s] and [their] effects had not resulted." *Harris*, at 588. To the contrary, we conclude that Burleson's testimony, admitting the acts alleged in the indictment, together with the other untainted testimony summarized above, constitutes evidence so overwhelming as to dissipate the effects of the section 2 videotape and section 3 procedures. Points of error one, two, and three are overruled.

In points of error four, five, and six, Burleson complains that the trial court erred in denying his requested questions in the jury charge on the defenses of necessity, duress, and medical care. Recognizing that a defendant is entitled to submission of every defensive issue raised by the evidence, despite the relative weakness of the evidence supporting it, *Hobson v. State*, 644 S.W.2d 473, 477 (Tex.Cr.App.1983), we find no such issues raised by the evidence in this case.

■ Burleson argues that the defense of necessity was raised when he testified he acted only because of the harm threatened against him by the child-complainant and her mother. Tex.Pen.Code Ann. § 9.22 (1974) provides that:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, ac-

cording to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing [sic] the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

(Footnote omitted.) The principle of reasonableness and the concept of harm-balancing are both central to the necessity defense. The term "ordinary standards of reasonableness" has been defined as those "standards that an ordinary and prudent person would apply to the circumstances that the actor faced." *Williams v. State*, 630 S.W.2d 640, 643 (Tex.Cr.App.1982). Applying this test and the idea that the harm sought to be avoided by the actor's conduct must clearly outweigh the harm caused by the conduct, it is clear that a charge on necessity was not warranted. The harm inflicted on the child-complainant by Burleson far outweighed the alleged harm he argues he sought to avoid, an unfounded report to authorities of his sexual abuse of the child-complainant. Further, this argument exceeds the reasonableness standard. Point of error four is overruled.

■ In his fifth point of error, Burleson argues that the defense of duress was raised when he testified that he acted because of the danger imposed upon him by the child-complainant's "assaults" upon him. Tex.Pen.Code Ann. § 8.05 (1974) provides in pertinent part:

(a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.

. . . .

(c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

(d) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.

. . . .

Burleson testified that when the child-complainant was five-and-one-half years old, she began "grabbing and running into" his genital area, hurting him. He also testified that he had testicular cancer. There was, however, no evidence of any threat of imminent death or serious bodily injury. Section 8.05(c) provides for a standard of reasonableness. Burleson's reaction to the alleged threat of the five-and-one-half-year-old child-complainant was not the reaction of a reasonable person. Further, section 8.05(d) provides that the defense of duress is not available if the defendant places himself in the situation in which it was probable that he would be subjected to compulsion. The record reveals that Burleson was not the child-complainant's father and was not married to her mother, yet continued to live under the alleged duress for six and one-half years. Point of error five is overruled.

■ Burleson further argues, in point of error six, that the trial court should have instructed the jury on the statutory defense of medical care defined in Tex.Pen. Code Ann. § 22.011(d)(2) (1989) and applied to this offense in § 22.021(d). Section 22.-011(d)(2) provides that it is a defense if "the conduct consisted of medical care for the child." The record is absolutely void of any evidence regarding medical care. Neither Burleson nor the child-complainant's mother testified that they thought they were providing medical care. Rather their testimony was phrased in terms of "treating" a "discipline problem." The point of error is overruled.

■ In his seventh point of error, Burleson complains that the trial court erred by denying his motion that the trial court require the State to elect exactly which alleged offense it would rely upon for conviction. He cites *Crawford v. State*, 696 S.W.2d 903, 906 (Tex.Cr.App.1985), for the general rule that, where one act of intercourse is alleged in the indictment and

more than one act is in evidence, upon motion of the accused, the State should be required to elect upon which act it will rely for a conviction and argues that the same should be applicable in an aggravated sexual assault of a child where the means of assault is the contact of the victim's sexual organ by the defendant's sexual organ.

Assuming without deciding that the rule is applicable in this case, we conclude that the State did so elect. Burleson seems to confuse the State's election of the act upon which it relies for conviction with the State's right to prove an offense within the pertinent period of limitations when he complains about the following portion of the charge:

> You are further charged as the law in this case that the State is not required to prove the exact date alleged in the indictment, but may prove the offense, if any, to have been committed at any time prior to the presentment of the indictment so long as said offense, if any, occurred within five years of the date of the presentment of the indictment; you are further instructed that the day the indictment was presented and the day of the offense, if any occurred, shall not be computed within the five-year limitation period.

> . . . .

> Now, bearing in mind the foregoing instruction, if you believe from the evidence beyond a reasonable doubt that the defendant, Randy Doyle Burleson, on or about the 26th day of May, 1986....

In response to Burleson's motion to elect, the following exchange took place outside the presence of the jury:

> THE COURT: Let me ask this question. The way I understand the State's case, the incident she testified in the video tape on May 30th, Friday [sic]. She talked about a bathroom incident. Evidently that's the charge that the State is going on, and she said that it happened on the Monday or Sunday before, I believe, is what she said.

> [ATTORNEY FOR THE STATE]: That's correct, Your Honor.

> THE COURT: That's the Charge. The indictment says the 26th of May, and that's what the State asked.

There was further discussion on this point, but it seems clear that the court and the State agreed that the State elected to rely upon the bathroom incident referred to in the child's videotaped testimony which, under *Long* and *Briggs* may be tainted, but was also referred to in her in-court testimony and in the testimony of Jennings, the child protection worker.

Regarding proof of date, when an indictment alleges the offense occurred "on or about" a certain date, the State is not bound to prove the offense occurred on or about that date; rather, a conviction may be had upon proof that the offense was committed any time prior to the filing of the indictment within the period of limitation. *Ex parte Alexander*, 685 S.W.2d 57, 59 n. 1 (Tex.Cr.App.1985); *Gallegos v. State*, 756 S.W.2d 45, 47 (Tex.App.1988, pet. ref'd). Point of error seven is overruled.

■ In point of error eight, Burleson complains that the trial court erred in denying his request for a limiting instruction regarding extraneous offenses or conduct in the punishment charge. The evidence relating to the extraneous offenses and conduct was adduced during the guilt-innocence phase; no evidence was put on at the punishment phase. The charge submitted during the guilt-innocence phase limited the jury's consideration of the evidence concerning extraneous offenses to their determination of the credibility of the defendant as a witness for himself and weight to be given to him as a witness and for no other purpose. It also limited the jury's consideration of the evidence concerning transactions other than the one charged in the indictment to their determination of the probability of the charged act and the unnaturalness of the defendant's attitude of lust toward his victim and for no other purpose. It further instructed that the charge contained the law applicable to the case. The punishment charge did not explicitly incorporate the earlier charge, but failure to do so is not reversible error.

*Henriksen v. State,* 500 S.W.2d 491, 496 (Tex.Cr.App.1973); *Walker v. State,* 701 S.W.2d 316, 321 (Tex.App.1985, pet. ref'd). Point of error eight is overruled.

The judgment of the trial court is affirmed.