Gardner v. State 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-91-158-CR




JESSE LOUIS GARDNER,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT



NO. 7468, HONORABLE DAN R. BECK, JUDGE PRESIDING



 




 Jesse Louis Gardner appeals his conviction for burglary of a habitation. See Tex.
Penal Code Ann. § 30.02(a)(3) (1989). In a single point of error Gardner complains that the trial
court erred in admitting fingerprint evidence obtained as a result of an illegal, warrantless arrest. 
We will reverse the conviction and remand the cause for a new trial.

 Before 7:30 a.m. on October 8, 1990, the Robert Bruening family left their
residence in rural Fayette County near the town of Shelby. Shelby is in Austin County near the
Fayette County line. The Bruening residence is located just off County Road 222 near the
intersection of that road and FM 389.

 Robert Bruening's brother, Aurel "Buster" Bruening, came to the residence about
2:00 p.m. that day to work on a fence. As he arrived he noticed an unfamiliar, dark brown car,
occupied by a "strange" man who "had glasses on, and had a little hat pulled over his eyes,"
parked alongside the county road opposite the drive to the residence. As Aurel turned into the
drive, the vehicle drove away, heading on County Road 222 in the direction away from FM 389
toward some woods. In that direction, County Road 222 meets another road about three miles
away. Soon thereafter, Aurel fired several gunshots "at a fish crane" eating the fish in his
brother's fish pond. When he fired the shots, the car apparently turned around, because it
returned, heading toward FM 389. Aurel never saw the car again and never saw anything to
connect Gardner to the car or its driver.

 After the car drove away, and about ten or fifteen minutes after Aurel arrived at
the residence, Aurel saw a black man wearing camouflage pants, whom he later identified as
appellant Jesse Louis Gardner, walking on County Road 222 toward FM 389. Aurel testified that
he thought this was unusual because "it was a black man. There is no black man lives within
eight or ten miles from that area." His suspicions aroused by the strange car and the stranger
walking down the road, Aurel drove around looking for the car he had seen earlier in order to
record its license number. In doing so, he drove past Gardner walking on the side of the road.

 Aurel was unsuccessful in finding the car, but he discovered two pillowcases
containing items he recognized as belonging to his brother, including a Nintendo game, a VCR,
two jewelry boxes and a Polaroid camera. The pillowcases were in a ditch alongside County Road
222 about forty to fifty yards from the drive to the residence in the direction of the woods. Aurel
then called the Fayette County Sheriff's Department to report a burglary.

 As Aurel continued to drive around the area, he saw Gardner, walking toward
Shelby on FM 389. He asked a local businessman to call the Austin County Sheriff's Department
"to have this man picked up."

 Aurel returned to the residence and discovered the back door had been kicked in. 
He summoned Fayette County deputy Mike Noak, who had responded to the call about the
pillowcases in the ditch, to observe where the burglar entered the residence. About 3:30 p.m.,
Noak requested that the Fayette County dispatcher alert Fayette and Austin County law
enforcement personnel of Gardner's description; both Austin and Washington County personnel
responded.

 Around 6:30 p.m., Robert Bruening saw a black man wearing camouflage pants
walking on FM 389 near the Austin and Washington County line. Because the man fit Aurel's
description of the stranger Aurel had seen walking past the residence, Robert called the Austin
and Washington County sheriff's departments. Shortly thereafter deputies Mike Randermann and
Randy Kettler of the Washington County Sheriff's Department intercepted Gardner walking
toward Brenham on FM 389 about two and one-half miles from Shelby and about one-half mile
inside the Austin County line. They arrested, handcuffed, and held him approximately twenty
minutes until Deputy Noak arrived and assumed his custody.

 After Gardner's arrest, a Fayette County jailer fingerprinted him. A deputy
investigator for the Fayette County Sheriff's Department identified similarities between one of
Gardner's prints and a latent print he lifted from the stolen Polaroid camera. A latent-print
examiner for the Department of Public Safety later confirmed that Gardner's fingerprint matched
the print found on the camera.

 Gardner testified at trial and explained that he and two male acquaintances from
Houston, known to him only as "Mo and Larry," came to Shelby looking for yardwork. That
morning Gardner had been showing off money he received in settlement of a personal-injury
claim. The men robbed and abandoned him. Gardner started walking toward Brenham where he
planned to call someone from home to come and pick him up. It was a hot day and Gardner was
thirsty, so as he walked along he watched the roadside for a bottle or something to fill with
drinking water. Gardner spotted the pillowcases in the ditch and looked inside to see if there was
some sort of a bottle inside. That, he claims, is how his fingerprint came to be on the camera.

 The State indicted Gardner for alleged unlawful entry of a habitation without the
effective consent of the owner. Before trial, Gardner filed a motion to suppress evidence
challenging the lawfulness of his arrest and the admissibility of all evidence derived from it. 
There was no pretrial hearing on the motion, but both parties filed briefs. The trial court
overruled the motion during the trial, permitting the State to introduce into evidence Gardner's
fingerprints, and both the deputy investigator's and the latent-print examiner's testimony that
Gardner's fingerprint was on the Polaroid camera stolen in the burglary.

 In his only point of error, Gardner complains that the trial court erred in admitting
the fingerprint evidence because Gardner's fingerprints were obtained after his warrantless arrest,
and probable cause for the arrest did not exist.

 As a general rule, a police officer must obtain an arrest warrant before taking
someone into custody. Dejarnette v. State, 732 S.W.2d 346, 349 (Tex. Crim. App. 1987);
Honeycutt v. State, 499 S.W.2d 662, 663-64 (Tex. Crim. App. 1973). Chapter fourteen of the
Code of Criminal Procedure governs the exclusive situations in which a police officer may make
an arrest without first obtaining an arrest warrant. Wilson v. State, 621 S.W.2d 799, 803-04
(Tex. Crim. App. 1981). Article 14.03(a)(1) permits a peace officer to arrest "persons found in
suspicious places and under circumstances which reasonably show that such persons have been
guilty of some felony or breach of the peace, or threaten, or are about to commit some offense
against the laws." Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (Supp. 1992) (emphasis added). 
Article 14.04 permits a warrantless arrest "[w]here it is shown by satisfactory proof to a peace
officer, upon the representation of a credible person, that a felony has been committed, and that
the offender is about to escape, so that there is no time to pursue a warrant." Tex. Code Crim.
Proc. Ann. art. 14.04 (1977) (emphasis added). The lawfulness of Gardner's arrest depends on
the applicability of one of these statutes and the presence of probable cause at the point of
Gardner's initial detention; "satisfactory proof" is the equivalent of constitutional probable cause. 
See Earley v. State, 635 S.W.2d 528, 531-32 (Tex. Crim. App. 1982).

 The test for probable cause to effect a warrantless arrest is whether at that moment
the facts and circumstances within the officer's knowledge and of which he had reasonably
trustworthy information were sufficient to warrant a prudent man in believing that the arrested
person had committed or was committing an offense. (1) Garrison v. State, 726 S.W.2d 134, 137
(Tex. Crim. App. 1987). Once the accused objects to the adequacy of probable cause for this
warrantless arrest, the State has the burden to present facts establishing the lawfulness of the
arrest. Id. at 137.

 The constitutional validity of a warrantless arrest can be decided only by the
specific factual situation in each individual case. Honeycutt, 499 S.W.2d at 665; Brown v. State,
481 S.W.2d 106, 109 (Tex. Crim. App. 1972). When several officers are involved in an
investigation, and one officer makes an arrest solely on the request of another officer,
determination of whether probable cause exists requires review of the sum of information known
to all of the cooperating officers at the time of the arrest. Garrison, 726 S.W.2d at 137; see also
Colston v. State, 511 S.W.2d 10, 12 (Tex. Crim. App. 1974). 

 The State failed to meet its burden of establishing that probable cause existed for
Gardner's arrest. The State claims that article 14.03(a)(1) authorized the warrantless arrest
because the burglary occurred in a rural, sparsely populated area, Gardner was a stranger in the
area, and he was on foot near the scene of the burglary with "no apparent business in the area
other than that he was escaping from the scene of the crime." However, "[i]n determining
whether a warrantless arrest may be justified under Article 14.03(a)(1) . . . [the Court of Criminal
Appeals] has held that where events are as consistent with innocent activity as with criminal
activity, the detention of a suspect based on those events is unlawful." Hoag v. State, 728 S.W.2d
375, 379 (Tex. Crim. App. 1987); Glass v. State, 681 S.W.2d 599 (Tex. Crim. App. 1984). 
Gardner was walking on a public road in broad daylight. His demeanor did not indicate that he
was nervous or anxious, and he did not attempt to flee or hide, even when Aurel fired gunshots
and drove past him several times, or when the police approached to arrest him. His actions were
as consistent with innocent as with criminal activity and did not justify a warrantless arrest under
article 14.03(a)(1).

 For article 14.04 to justify the arrest, the State must show the officers had
satisfactory proof that: (1) a felony had been committed; (2) the appellant was the offender; and
(3) the appellant was about to escape. DeJarnette, 732 S.W.2d at 349; see also Sklar v. State,
764 S.W.2d 778, 780 (Tex. Crim. App. 1987).

 Noak had sufficient proof to satisfy the first element of article 14.04; Aurel
reported that his brother's house had been burglarized, and Noak retrieved the pillowcases stuffed
with stolen items from the ditch and observed the broken door frame.

 The facts are not sufficient, however, to warrant a prudent man in believing that
Gardner was the offender, as required by both article 14.04 and article 14.03(a)(1). In addition
to the facts above, to establish probable cause the State argues: (1) Aurel is a lifelong Shelby
resident whose credibility has never been challenged; (2) Gardner fit Aurel's description of the
burglar; (3) the ditch where Aurel found the pillowcases was overgrown with sticker bushes and
Gardner's clothing also was covered with stickers; and (4) Aurel positively identified Gardner
after the arrest.

 The State's brief in response to defendant's motion to suppress evidence states
"Buster reported the burglary to Noak and described the suspect . . . . Noak relayed the
description to the dispatcher with instructions to alert authorities in neighboring Austin County." 
At trial Noak testified that Aurel told him a burglary had occurred at Aurel's brother's residence
and "they told me it was a black male about six foot, wearing camouflage pants, and that he was
walking toward Shelby."

 This tip does not relate "satisfactory proof" from which Noak could reasonably
determine that Gardner was the offender. Because Noak based his probable-cause assessment on
information received from an informant, probable cause for the warrantless arrest must be
supported by information sufficient to allow a magistrate to determine probable cause for the
issuance of a search warrant. Wilson, 621 S.W.2d at 804. To support the issuance of a warrant
based on an informant's tip, identification of a particular person as the offender must be made in
the officer's presence or must show that the person making the identification was known to the
officer as an eyewitness to the commission of the offense, or must state underlying facts
supporting the informant's conclusion that the person committed the offense. See Lowery v. State,
499 S.W.2d 160, 163 (Tex. Crim. App. 1973). Noak's statements do not establish that Aurel
related to Noak the underlying facts supporting his conclusion that Gardner committed the offense.
 Without knowledge of these underlying facts, the fact that Noak believed Aurel to be a credible
person whose credibility had never been challenged or that Gardner fit Aurel's description of the
burglar is not controlling. 

 Even if we assume that Aurel related all of the afternoon's events to Noak, the facts
are still insufficient to show probable cause for arresting Gardner under either article 14.04 or
article 14.03(a)(1). Gardner was not the only person Aurel saw near the residence; Aurel also
saw the strange brown car with its strange driver parked at the entrance to the drive. The driver
moved the car when Aurel appeared and drove away when Aurel shot the gun. Aurel suspected
that Gardner and the man in the car were accomplices; however, Aurel did not see Gardner get
in or out of the car, he did not see the car stop by Gardner, and he did not see Gardner standing
near the car or speaking to the driver. Neither did Aurel see Gardner near the residence. 
Further, no evidence established that Gardner's presence in the area coincided with the time of
the burglary. The burglary could have occurred any time between 7:30 a.m. and 2:00 p.m. 
Aurel saw Gardner walking on County Road 222 toward the drive to the residence about 2:15
p.m. Without such proximity in time, it would be unreasonable to conclude that a person seen
walking on the road was necessarily the offender. See Glass, 681 S.W.2d at 601. Moreover,
Aurel became suspicious even before he discovered the burglary. Inarticulate hunches and
suspicions are not enough to justify a warrantless arrest. Honeycutt, 499 S.W.2d at 665.

 That both the pillowcases and Gardner's clothing were covered with stickers, that
Aurel positively identified Gardner after the arrest, and that Gardner's fingerprint was found on
the camera add nothing. Probable cause must exist at the time of the arrest; information gained
after the arrest cannot be used to bolster probable cause. (2) Wilson, 621 S.W.2d at 804; Colston,
511 S.W.2d at 13.

 The State agrees Gardner's fingerprints were not admissible unless he was lawfully
arrested. Since the arrest was unlawful, fingerprints taken after the arrest were inadmissible and could not be used to make a comparison to the latent fingerprint found on the
stolen camera. See Tex. Code Crim. Proc. Ann. art. 38.23 (Supp. 1992); Davis v. Mississippi,
394 U.S. 721 (1969). Both the fingerprints and the latent-print examiner's testimony should have
been excluded.

 Finally, we consider whether the error in admitting the fingerprint evidence was
harmful. A judgment will not be reversed for admission of evidence that did not injure the
accused. Tex. R. App. P. Ann 81(b)(2) (Pamph. 1992); Prior v. State, 647 S.W.2d 956, 959
(Tex. Crim. App. 1983). The test for harmful error is whether there is a reasonable possibility
that the evidence complained of might have contributed to the conviction or affected the
punishment. Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989); Self v. State, 709
S.W.2d 662, 668 (Tex. Crim. App. 1986). 

 Without evidence connecting Gardner's fingerprint to the one on the stolen camera,
the only proof linking Gardner to the burglary was his walking on the road in front of the scene
of the crime on the day of the offense. The State concedes that it could not have obtained
Gardner's fingerprints without the arrest and that the fingerprint evidence contributed to the
conviction. Therefore, improper admission of this evidence harmed Gardner and the conviction
must be reversed. See Tex. R. App. P. Ann. 81(b)(2) (this Court must reverse the conviction
unless it can determine beyond a reasonable doubt that improper admission of the evidence made
no contribution to the conviction); Mallory v. State, 752 S.W.2d 566, 569-70 (Tex. Crim. App.
1988); Powell v. State, 778 S.W.2d 484, 486 (Tex. App. 1989, no pet.).

 We sustain Gardner's point of error, reverse the judgment, and remand the cause
for a new trial.




 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Reversed and Remanded

Filed: July 1, 1992

[Do Not Publish]
1. The State concedes this was a warrantless arrest and not an investigative stop. Compare
Tex. Code Crim. Proc. Ann. art 15.22 ("A person is arrested when he has been actually
placed under restraint or taken into custody . . . by an officer . . . arresting without a
warrant.") and Hoag v. State, 728 S.W.2d 375, 379 (Tex. Crim. App. 1987) ("An arrest is
complete when a person's liberty of movement is restricted or restrained.") with Terry v.
Ohio, 392 U.S. 1 (1968). Circumstances short of probable cause for arrest may justify a
temporary detention for investigation and questioning. Baity v. State, 455 S.W.2d 305, 308
(Tex. Crim. App.), cert. denied, 400 U.S. 918 (1970).
2. It is unclear from the State's appellate brief whether the "sticker" evidence was gained
before or after Gardner's arrest. Trial testimony indicates it was discovered after arrest. In
any event, Noak testified that the roadside was overgrown with sticker bushes and that a
pedestrian stepping off the paved road would get stickers. Thus, this fact is as consistent with
innocent activity as with criminal activity and does not further the conclusion that Gardner
committed any offense.