In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00077-CV
______________________________


Â 
Â 
IN THE MATTER OF A. W., A JUVENILE
Â 
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law No. 3
Smith County, Texas
Trial Court No. 003-0327-03


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â A. W., a juvenile, has filed a motion, signed by himself, a parent, and his attorney, seeking
to dismiss his appeal. Pursuant to Tex. R. App. P. 42.1, his motion is granted.
Â Â Â Â Â Â Â Â Â Â Â Â We dismiss the appeal.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â November 1, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â November 2, 2004



ley questions, "Robert?" and the child responds, "Uh-huh." Although the child does
not go into great detail about how he knew the person who was touching him, it appears
the person lived down the street from the child. 

 Later in the interview, the child said the name "Roger." The first mention of that
name was when the child said, "we saw a black car coming up, looking for Roger." The
child does not continue his story about the black car because he was interrupted by
Smedley, who asked, "Is it Roger or Robert?" When the child answers, "Roger," Smedley
asked if she got it wrong when she wrote Robert and changed her earlier notes about who
had touched the child from "Robert" to "Roger." On cross-examination and in closing
argument, Carlock questioned and focused on these inconsistencies. But, as mentioned
earlier, the child testified in person at trial; there, the child only said the name "Roger" and
even pointed to Carlock as the person who had touched him.

 Article 38.071 of the Texas Code of Criminal Procedure provides that the recording
of an oral statement by a child who is younger than thirteen and a victim of certain
offenses, including indecency with a child, is admissible in evidence so long as certain
prerequisites are met, one of which is the statement was not made "in response to
questioning calculated to lead the child to make a particular statement." Tex. Code Crim.
Proc. Ann. art. 38.071, § 5(a)(4) (Vernon Supp. 2003). In the past, we have construed this
language as invalidating the videotape only if, taken as a whole, the statement is the
product of leading questions. Mallory v. State, 699 S.W.2d 946, 951 (Tex.
App.-Texarkana 1985), rev'd & remanded on other grounds, 752 S.W.2d 566 (Tex. Crim.
App. 1988). Leading questions that are isolated, or those concerning the details of
testimony already given in response to proper interrogation, or those concerning matters
not directly relating to the offense, will not destroy the videotape's admissibility so long as
the overall product is not the result of suggestion. Id. 

 From our review of the videotape, we agree Smedley should not have been so quick
to switch the child's focus away from the name "Robert" on his first mention of the name
"Roger." Smedley admitted on cross-examination it was possible she was listening for the
name "Roger" in the interview. We do not know what the child intended to say after he
brought up the name "Roger," because Smedley then immediately launched into
questioning the child about whether he was saying "Roger," not "Robert." Smedley
ultimately concluded she misunderstood the child earlier in the interview when he said
Robert had touched him. However, for the remainder of the interview most of Smedley's
questions about what happened to the child are phrased along the lines of what did "he"
do to you. She only uses the name Roger twice in the remainder of her questioning. We
do not find the videotape, taken as a whole, was the result of suggestion. 

 Carlock also contends the admission of the videotape bolstered the testimony of the
victim. We disagree. Instead of bolstering the victim's testimony, this videotape tended
to impeach it. The child, when asked on the videotape, "who touches you or tries to see
private places," answered, "Only one person that does it . . . [t]hat's Robert." Carlock's
counsel used the child's inconsistencies on the videotape in his closing argument to the
jury. He repeated the name, "Robert, Robert, Robert, Robert, Robert" as he pointed out
the inconsistencies in the victim's story. 

 Even an erroneous admission of a videotape can be harmless when the videotape
provides a defendant's "main attack" against the victim's testimony. Clark v. State, 781
S.W.2d 954, 958-59 (Tex. App.-Fort Worth 1989, no pet.). Therefore, even if the
admission of the videotape in this case were error, it was harmless because it provided
Carlock with his main attack against the victim's testimony in court. Carlock's second point
of error is overruled. 

 As his third point of error, Carlock contends the trial court erred in admitting into
evidence two uncertified copies of judgments of conviction against him. The judgments
were purportedly for the same convictions alleged in the indictment for enhancement of
punishment, and the State introduced such judgments through its witness, Kathy Worth,
who had served as Carlock's parole officer. The following testimony shows the context in
which these documents were received into evidence:

 Q (BY MR. BAILEY) [State's counsel]: Ms. Worth, let me show
you State's Exhibit 2 and State's Exhibit 3.


 A Yes, sir.


 Q Okay. Are those the two cases that you supervised the defendant, Roger Carlock, on?


 A Yes, sir, they are.


 Q Okay, and he's the same person that's present here in court 
today; is that correct?


 A That's correct.


 Q The State would offer State's Exhibit[s] 2 and 3.


 . . . .


 THE COURT: If you want to examine the documents.


 MR. COLLEY [Defense Counsel]: Yes, sir.


 Judge, I'm going to object. She's not supervising him. She's
not going to be able to testify that those are the judgments that were entered
on a certain day and that they apply to this.


 THE COURT: It's overruled. They're admitted.


 . . . .


 Q (BY MR. BAILEY) You mentioned - before I gave you those papers
- that you supervised him for indecency with a child in one case and sexual
assault in the other; is that correct?


 A Yes, sir.


 Q Okay, and you're familiar with what he was convicted of and what you were to supervise him for. That's part of your job; is that correct?


 A Yes, sir, it is.


 Q And you, in performing your job duties, check information about
him as far as his convictions - and that, I believe, is even sent to you from
the penitentiary - in your effort to supervise someone; is that correct?


 A Yes. 


 Q So, you've seen other copies of those documents in your own
files; is that correct?


 A Yes, sir, I have.


 In Bautista, the defendant complained of the use of a parole officer to prove the
enhancements used against him, urging that this method was not one of the accepted
methods of proving enhancements. Bautista v. State, 642 S.W.2d 233, 236 (Tex.
App.-Houston [14th Dist.] 1982, pet. ref'd, untimely filed). The defendant pointed to the
following as a list of approved methods: 1) testimony of a witness who personally knows
the defendant and the fact of his prior conviction and identifies him; 2) stipulation or judicial
admission of the defendant that he has been so convicted; 3) introduction of certified
copies of the judgment, sentence, and record of the Texas Department of Corrections or
a county jail, including fingerprints of the accused, supported by expert testimony
identifying them with known prints of the defendant; 4) comparison by the fact-finder of a
record of conviction, which contains photographs and a detailed physical description of the
named person, with the appearance of the defendant present in court. Id. at 236-37. 

 In Bautista, the defendant argued that using a parole officer was not an approved
method of proving a defendant's prior criminal convictions because the parole officer's
testimony was insufficient evidence to establish the defendant was the same person
named in and present in court on the dates mentioned in the certified copies of the two
judgments. Id. The court, while acknowledging the four methods cited by Bautista,
concluded the list was not exhaustive, but also decided the testimony of the parole officer
satisfied the first suggested method, "Testimony of a witness who personally knows the
defendant and the fact of his prior conviction and identifies him." Id. The court points out
there would be no self-serving reason for the defendant to admit himself or herself to
parole under the previous cases unless he or she was the convicted defendant thereunder.
 Id. at 237.

 In this case, Carlock distinguishes Bautista because in that case the parole officer
testified using certified copies of the judgments against the defendant, whereas in this case
copies of the judgments were admitted into evidence that were not certified. Carlock
contends the "appropriate" method to introduce the prior judgments was to obtain certified
copies and offer those judgments under Texas Rule of Evidence 902(4) as certified public
records. (2) Rule 902 describes documents that are self-authenticating, and Carlock's
suggested method is certainly the traditional method of introducing a prior judgment. 
However, if a document is not self-authenticated under Rule 902, it still can be
authenticated under Rule 901. (3) 

 Rule 901(b)(7) illustrates how to authenticate public records and reports. Tex. R.
Evid. 901(b)(7). To authenticate a public record which is authorized by law to be recorded
or filed in a public office, the testifying witness must be able to provide evidence that the
writing is from the public office that keeps that type of record. Id. Carlock contends the
parole officer could not authenticate the judgments because she was not the custodian of
those records and therefore could not authenticate the judgments by "mere testimony that
he or she once supervised a Defendant on parole." Carlock is correct. The parole officer
was able to testify she was familiar with the defendant and his previous criminal record;
however, her testimony was not sufficient to authenticate the two judgments because she
was unable to provide the necessary proof that those two judgments were from the public
office responsible for maintaining those records. Because the judgments were not certified
copies, authentication was required and the parole officer's testimony was not enough. 

 The State contends any complaint regarding the introduction of Carlock's prior
convictions was waived because Carlock's own witnesses testified about Carlock having
prior convictions. On cross-examination, Carlock's sister acknowledged she knew Carlock
had been to the penitentiary twice. Another witness, Jeanetta Heath, testified on cross-examination she knew Carlock had been convicted of sex offenses before. The State
emphasizes Carlock asked one witness, Phillip Hawkins, about the prior convictions on
direct examination and contends this constituted waiver under Ex parte Girnus, 640
S.W.2d 619 (Tex. Crim. App. 1982). 

 In Girnus, the court's holding was contingent on the defendant taking the stand at
the guilt/innocence stage of the trial. Id. at 620. The court concluded that, if the defendant
takes the stand and any part of his or her prior criminal record is properly used for
impeachment, the same need not be reintroduced at the trial on punishment and such
evidence may be properly considered by the judge or jury assessing the penalty. Id. at
620-21. The facts of this case are distinguishable from Girnus because Carlock did not
testify. Moreover, the testimony given by the witnesses who testified on Carlock's behalf
acknowledged his prior convictions only in general terms. The most specific reference
involved the question posed to Carlock's sister, which did mention the year of two
convictions. However, no one referred to cause numbers or any other specifics of
Carlock's prior convictions alleged in the indictment and which the State was required to
prove. Carlock did not waive this argument.

 It was error for the trial court to admit the two uncertified copies of the judgments
because the testimony of the parole officer was insufficient to authenticate the documents
under Rule 901. See Tex. R. Evid. 901. This error was obviously harmful to Carlock. The
jury assessed punishment at ninety-nine years' imprisonment, which was only permissible
because of the enhancements. Therefore, Carlock's third point of error is sustained.

 We affirm the conviction, but reverse the punishment and remand the case for a
new trial on punishment.



 Donald R. Ross

 Justice



 

Date Submitted: January 15, 2003

Date Decided: February 5, 2003


Publish

1. Art. 36.01. Order of proceeding in trial


 (a) A jury being impaneled in any criminal action, except as provided
by Subsection (b) of this article, the cause shall proceed in the following
order:


 1. The indictment or information shall be read to the jury by the
attorney prosecuting. When prior convictions are alleged for purposes of
enhancement only and are not jurisdictional, that portion of the indictment or
information reciting such convictions shall not be read until the hearing on
punishment is held as provided in Article 37.07.


 . . . .



 3. The State's attorney shall state to the jury the nature of the
accusation and the facts which are expected to be proved by the State in
support thereof.


 . . . .



 (b) The defendant's counsel may make the opening statement for the
defendant immediately after the attorney representing the State makes the
opening statement for the State. After the defendant's attorney concludes
the defendant's opening statement, the State's testimony shall be offered. 
At the conclusion of the presentation of the State's testimony, the
defendant's testimony shall be offered, and the order of proceedings shall
continue in the manner described by Subsection (a) of this article.


Tex. Code Crim. Proc. Ann. art. 36.01 (Vernon Supp. 2003).

 
2. Tex. R. Evid. 902 provides:

 RULE 902. SELF-AUTHENTICATION 


 Extrinsic evidence of authenticity as a condition precedent to
admissibility is not required with respect to the following: 

 

 . . . .

 
 (4) Certified Copies of Public Records. A copy of an official record
or report or entry therein, or of a document authorized by law to be recorded
or filed and actually recorded or filed in a public office, including data
compilations in any form certified as correct by the custodian or other person
authorized to make the certification, by certificate complying with paragraph
(1), (2) or (3) of this rule or complying with any statute or other rule
prescribed pursuant to statutory authority. 
3. Tex. R. Evid. 901 provides:
 RULE 901. REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION 

 (a) General Provision. The requirement of authentication or
identification as a condition precedent to admissibility is satisfied by evidence
sufficient to support a finding that the matter in question is what its proponent
claims. 

 (b) Illustrations. By way of illustration only, and not by way of
limitation, the following are examples of authentication or identification
conforming with the requirements of this rule: 

 . . . .

 
 (7) Public records or reports. Evidence that a writing authorized by
law to be recorded or filed and in fact recorded or filed in a public office, or
a purported public record, report, statement, or data compilation, in any form,
is from the public office where items of this nature are kept.